# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Erie Insurance Exchange, | : | |
| an unincorporated association, by | : | |
| Joseph S. Sullivan and Anita Sullivan, | : | |
| Jenna L. DeBord, and Patricia R. | : | |
| Beltz, trustees ad litem, and/or as | : | |
| members of Erie Insurance Exchange, | : | |
| Petitioners | : | |
| | : | |
| v. | : | No. 872 C.D. 2015 |
| | : | Argued: December 9, 2015 |
| Pennsylvania Insurance Department, | : | |
| Respondent | : | |

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge[1]
HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE ROBERT SIMPSON, Judge
HONORABLE MARY HANNAH LEAVITT, Judge[2]
HONORABLE P. KEVIN BROBSON, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge


**OPINION BY JUDGE BROBSON**                **FILED:  January 27, 2016**


Petitioners Joseph S. Sullivan, Anita Sullivan, Jenna L. DeBord, and Patricia R. Beltz, purportedly acting on behalf of Erie Insurance Exchange (Exchange), an unincorporated association, petition for appellate review of an April 29, 2015 Declaratory Opinion and Order by then-Acting Insurance

---

[1] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

Commissioner (Commissioner) Teresa D. Miller.[3] That decision places the Commissioner's regulatory imprimatur on "transactions between . . . Exchange and Erie Indemnity Company (Indemnity)[4] in which Indemnity retained or received revenue from installment and other service charges from Exchange subscribers." Specifically, the Commissioner concluded that these transactions did not violate Article XIV of the Insurance Company Law of 1921, commonly referred to as the Insurance Holding Companies Act (IHCA).[5] For the reasons set forth below, we vacate the Commissioner's decision and remand this matter for further proceedings.

## I. BACKGROUND

Petitioners initiated their lawsuit against Indemnity in the Court of Common Pleas of Fayette County (trial court) in 2012. At present, Petitioners are proceeding under their Second Amended Complaint. (Reproduced Record (R.R.) 6a-18a.)[6] Petitioners allege that they are members of Exchange. Exchange is a reciprocal insurance exchange organized under the laws of the Commonwealth of Pennsylvania.[7] Exchange is part of a group of affiliated companies, known as the

---

[3] The Pennsylvania Senate confirmed Commissioner Miller's appointment on June 3, 2015.

[4] Indemnity intervened in this matter by filing a notice of intervention.

[5] Sections 1401-1413 of the Act of May 17, 1921, P.L. 682, added by Section 19 of the Act of December 18, 1992, P.L. 1519, *as amended*, 40 P.S. §§ 991.1401-.1413.

[6] The factual background set forth herein is gleaned from both the Second Amended Complaint and the parties' Joint Statement of Undisputed Facts (Stipulation), (R.R. 34a-80a), filed with the Commission as part of this matter.

[7] Sections 1001-1011 of the Insurance Company Law of 1921, Act of May 17, 1921, P.L. 682, *as amended*, 40 P.S. §§ 961-971 (Article X).

Erie Group, and thus is part of an insurance holding company system. *See* Section 1401 of the IHCA, 40 P.S. § 991.1401 (defining "insurance holding company system"). A reciprocal insurance exchange is a vehicle through which individuals or entities, called "subscribers," can exchange contracts to indemnify each other for losses. Section 1001 of Article X, 40 P.S. § 961. Simply stated, it is a type of insurance company.

Under Article X, the subscribers of a reciprocal insurance exchange may appoint an attorney-in-fact to issue the contracts of insurance to the subscribers—*i.e.*, to conduct the business of the exchange. Section 1003 of Article X, 40 P.S. § 963. Since Exchange's inception in 1925, Indemnity has served as the designated attorney-in-fact for Exchange. As the attorney-in-fact, Indemnity is required to make periodic filings with the Pennsylvania Insurance Department (Department) and to procure annually from the Commissioner a certificate of authority to act as attorney-in-fact. Sections 1004-1007 of Article X, 40 P.S. §§ 964-967.

As the attorney-in-fact for Exchange and part of the Erie Group insurance holding company system, Indemnity's authority to act on behalf of Exchange and its subscribers is prescribed by both governing Pennsylvania insurance laws and its agreement with Exchange's subscribers—the Subscriber's Agreement. (R.R. 81a). In their Second Amended Complaint, Petitioners seek to recover sums allegedly due to Exchange that Petitioners claim have been wrongfully appropriated by Indemnity as attorney-in-fact. (Compl. ¶ 9.) Petitioners allege that under the Subscriber's Agreement, Indemnity agreed to perform certain services for Exchange, including managing Exchange's business affairs; issuing, cancelling, or nonrenewing policies; and collecting premiums,

3

which includes the processing of invoices for the collection of premiums. (Compl. ¶¶ 23-24.) In return for these services, Petitioners allege that under the Subscriber's Agreement, Indemnity is to be paid a "maximum fee . . . [of] 25% of all written and assumed premiums received by Exchange." (Compl. ¶ 20.)[8]

Petitioners allege that prior to September 1, 1997, certain subscribers of Exchange who paid their insurance premium in installments paid a fixed fee, which Petitioners refer to as a "Service Charge," *to Exchange* as consideration for the installment plan. (Compl. ¶ 26.) Beginning on September 1, 1997, Petitioners allege that Indemnity began to keep the Service Charges for itself, rather than pass the monies on to Exchange. Petitioners allege that Indemnity kept these funds "in addition to" the compensation provided in the Compensation Provision of the Subscriber's Agreement. Petitioners further allege that beginning in 2008, Indemnity began to assess Exchange subscribers late payment and policy

---

[8] The paragraph of the Subscriber's Agreement relating to compensation (Compensation Provision) provides:

> 3) You [(the subscriber)] agree that as compensation for us [(Indemnity)] a) becoming and acting as Attorney-In-Fact; b) managing the business and affairs of [Exchange]; and c) paying general administrative expenses, including sales commissions, salaries and employee benefits, taxes, rent, depreciation, supplies and data processing, we may retain up to 25% of all premiums written or assumed by [Exchange]. The rest of the premiums will be used for losses, loss adjustment expenses, investment expenses, damages, legal expenses, court costs, taxes, assessments, licenses, fees, any other government fines and charges, establishment of reserves and surplus, and reinsurance, and may be used for dividends and other purposes we decide are to the advantage of the Subscribers.

(R.R. 81a.)

4

reinstatement fees, which Petitioners refer to as "Added Service Charges," but did not pass those collected funds on to Exchange. Petitioners complain that Indemnity took these actions without amending the Subscriber's Agreement. (Compl. ¶¶ 27-28.)

Petitioners' six-count pleading essentially advances three legal theories. First, Petitioners contend that in retaining the Service Charges and the Added Service Charges, Exchange has breached the Subscriber's Agreement, and its duty of good faith and fair dealing related thereto, by taking additional compensation (*i.e.*, compensation beyond the up to 25% of premiums paid by Exchange subscribers) for services that Exchange was required to perform as attorney-in-fact for the compensation set forth in the Compensation Provision of the Subscriber's Agreement. (Compl. ¶¶ 34, 35, 53, 54, 76, 77.) Second, Petitioners allege that by retaining the Service Charges and Added Service Charges, Indemnity took economic advantage of its attorney-in-fact status and entered into an "Intercompany Transaction" with Exchange for its own profit, in breach of its role as a fiduciary of Exchange. (Compl. ¶¶ 38-41, 57-60, 80-83.) Third, but somewhat related to both their assumpsit and breach of fiduciary duty claims, Petitioners complain that Indemnity has been unjustly enriched by its conduct. Petitioners seek equitable relief in the form of an accounting of all "Intercompany Transactions" between Indemnity and Exchange from January 1996 to the present; an injunction barring Indemnity from receiving compensation for its attorney-in-fact services other than that permitted in the Compensation Provision of the Subscriber's Agreement; an order of restitution and creation of a constructive trust; and "such other relief as may be appropriate." (Compl. ¶¶ 46-50, 65-69, 88-92.)

5

According to the trial court's December 19, 2013 Opinion and Order, (R.R. 19a-25a), Indemnity lodged eight preliminary objections to the Second Amended Complaint. The trial court overruled the first, sustained the second, and deferred ruling on the remaining preliminary objections.[9] In its second preliminary objection, Indemnity, invoking the doctrine of primary jurisdiction, requested that the trial court stay further proceedings and refer issues raised in the Second Amended Complaint that fall within the Department's area of expertise to the Department for consideration. Through its December 19, 2013 Order, (R.R. 25a), and a subsequent amending order, (R.R. 26a-27a), the trial court did just that.[10]

Upon referral, the parties sought a status conference with the Department.[11] A binder of "Relevant Pleadings, Motions, and Briefing" from the trial court was filed with the Department. On March 17, 2014, then-Insurance Commissioner Michael F. Consedine appointed James A. Johnson to serve as

---

[9] Not yet decided by the trial court are Indemnity's preliminary objections that raise the question of whether Petitioners may commence their civil action and raise their claims set forth in the Second Amended Complaint in the name and on behalf of Exchange.

[10] Petitioners sought an interlocutory appeal of the trial court's decision to the Pennsylvania Superior Court, but they were unsuccessful. (Certified Record (C.R.), Dep't Docket Ex. 28.)

[11] In a March 13, 2014 letter to the Administrative Hearing Office of the Department, counsel for Petitioners noted with respect to their participation in proceedings before the Commissioner: "[W]e maintain that the doctrine of primary jurisdiction is not applicable to this litigation, and do not intend, by participating in a meeting, to waive that issue." (C.R., Dep't Docket Ex. 4.) An Order of the Presiding Officer later confirmed Petitioners' preservation of this issue. (C.R., Dep't Docket Ex. 19.) Accordingly, we reject Indemnity's argument, raised at pages 33 and 36-39 of its brief, that Petitioners have waived their right to challenge the referral by the trial court and/or the scope of issues decided by the Commissioner upon referral or should be estopped from challenging such matters because of their participation, under protest, in the proceedings before the Commissioner.

6

Presiding Officer. The Presiding Officer conducted a conference, after which he issued an April 21, 2014 Order, directing, *inter alia*, the parties to each file a statement of proposed issues to be decided by the Commissioner, but encouraging a joint statement if possible. The parties submitted separate and somewhat conflicting statements. Thereafter, the Presiding Officer issued a May 30, 2014 Order, setting forth the issue to be decided as follows:

> The issue in these proceedings is whether [Indemnity's] retention of service charges and added service charges as defined in the plaintiffs' underlying second amended complaint meets the standards set forth in the [IHCA], including but without limitation whether those transactions were fair and reasonable.

(C.R., Dep't Ex. 32.) In a later order, the Presiding Officer held that Exchange, as the party seeking relief, bore the initial burden of production and the ultimate burden of persuasion by a preponderance of the evidence on this issue. (C.R., Dep't Ex. 51.)

The parties engaged in discovery and filed the Stipulation (including 229 separately-numbered paragraphs) on September 3, 2014. The parties described the transactions at issue as follows: (1) from September 1, 1997, through 1998, Indemnity started to retain a portion of the Service Charges collected from Exchange subscribers and not pass the full amount on to Exchange; (2) from 1999 forward, Exchange retained all Service Charges; and (3) beginning in 2008, Indemnity began to collect from Exchange subscribers the Added Service Charge and retained all Added Service Charge funds collected (collectively, Transactions). (R.R. 51a-52a, 58a-60a.) The parties stipulated to the admission of exhibits. The Presiding Officer took administrative notice of certain facts. The parties filed briefs, and the Presiding Officer heard oral argument on January 6, 2015.

7

Thereafter, the Commissioner issued the determination that is the subject of this appeal. In that determination, the Commissioner noted that "[t]he sole issue before the Department is whether the transactions[, meaning the retention of service charges and added service charges by Indemnity,] violated the standards contained in the IHCA." (Declaratory Op. at 47.) Petitioners contended that the Transactions, or Indemnity in effectuating the same, violated the following three standards in the IHCA:

Transactions within an insurance holding company system to which an insurer subject to registration is a party shall be subject to all of the following standards:

(i)  The terms shall be *fair and reasonable*.

. . . .

(iii)  Expenses incurred and payment received shall be allocated to the insurer in conformity with customary insurance accounting practices consistently applied and all cost-sharing or expense allocation arrangements must be formalized in writing and authorized by the board of directors of the domestic insurer.

(iv)  The books, accounts and records of each party to all such transactions shall be so maintained as to clearly and accurately disclose the nature and details of the transactions, including such accounting information as is necessary to support the reasonableness of the charges or fees to the respective parties.

Section 1405(a)(1)(i), (iii), (iv) of the IHCA, 40 P.S. § 991.1405(a)(1)(i), (iii), (iv) (emphasis added). According to the Commissioner, Petitioners contended that the Transactions violated the "fair and reasonable" standard in the IHCA because (a) they were contrary to the terms of the Subscriber's Agreement; (b) there was a lack of disclosure and independent review of the transactions; and (c) they were substantively unfair to Exchange. (Declaratory Op. at 75.) The Commissioner

8

analyzed and rejected each of these contentions. (*Id.* at 75-81, 82-84). She also rejected Petitioners alleged violations of the other statutory standards. (*Id.* at 81-82.) This appeal followed.[12]

## II. DISCUSSION

On appeal, Petitioners argue legal error and contest one of the Commissioner's factual findings. As for legal error, Petitioners contend that the Department erred by asserting primary jurisdiction over Petitioners' common law tort and contract claims against Indemnity. To the extent the Commissioner appropriately ruled on Petitioners' breach of contract claim, Petitioners argue that she erred in concluding that Indemnity did not breach the Subscriber's Agreement and that Indemnity satisfied its fiduciary duty to Exchange. Petitioners also contend that the Commissioner erred in concluding that the Transactions did not violate the above-quoted standards in the IHCA.

In *Pettko v. Pennsylvania American Water Company*, 39 A.3d 473 (Pa. Cmwlth. 2011), *appeal denied*, 51 A.3d 840 (Pa. 2012), this Court observed:

> [T]he doctrine of primary jurisdiction permits the bifurcation of a plaintiff's claim, whereby a trial court,

---

[12] We note that this Court must affirm the Commissioner's determination unless we find that it violates Petitioners' constitutional rights, it is not in accordance with law, it violates a practice or procedure of Commonwealth agencies, or a necessary finding of fact is not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704; *Graduate Health Sys., Inc. v. Pa. Ins. Dep't*, 674 A.2d 367, 370 (Pa. Cmwlth. 1996). Though this matter commenced before the Commissioner on referral from the trial court, Petitioners have properly invoked this Court's appellate jurisdiction under Section 763(a) of the Judicial Code, 42 Pa. C.S. § 763(a), for judicial review of the Commissioner's determination before the matter reverts back to the trial court. *Elkin v. The Bell Tel. Co. of Pa.*, 420 A.2d 371, 376 & n.6 (Pa. 1980) (holding that notwithstanding bifurcated process of primary jurisdiction, review of agency determination upon referral should proceed "through normal channels"); *see Pettko v. Pa. Am. Water Co.*, 39 A.3d 473, 480 (Pa. Cmwlth. 2011), *appeal denied*, 51 A.3d 840 (Pa. 2012).

faced with a claim requiring the resolution of an issue that is within the expertise of an administrative agency, will first cede the analysis of the issue or issues to that agency. Once the agency resolves the particular issue or issues over which it has primary jurisdiction, the trial court may proceed, if necessary, to apply the agency's decision to the dispute remaining before the trial court. The doctrine "creates a workable relationship between the courts and administrative agencies wherein, in appropriate circumstances, the courts can have the benefit of the agency's views on issues within the agency's competence."

*Pettko*, 39 A.3d at 479 (quoting *Elkin v. The Bell Tel. Co. of Pa.*, 420 A.2d 371, 376 (Pa. 1980)). Once the administrative agency decides the matter(s) referred, the trial court must adhere to the agency's determination in the trial court proceeding. *Id.* at 479-80. As we noted in *Pettko*, however, the Supreme Court of Pennsylvania has instructed that the doctrine of primary jurisdiction must be used sparingly and under the appropriate circumstances:

[W]here the subject matter is within an agency's jurisdiction *and* where it is a complex matter requiring special competence, with which the judge or jury would not or could not be familiar, the proper procedure is for the court to refer the matter to the appropriate agency. Also weighing in the consideration should be the need for uniformity and consistency in agency policy and the legislative intent. Where, on the other hand, the matter is not one peculiarly within the agency's area of expertise, but is one which the courts or jury are equally well-suited to determine, the court must not abdicate its responsibility. In such cases, it would be wasteful to employ the bifurcated procedure of referral, as no appreciable benefits would be forthcoming.

*Elkin*, 420 A.2d at 377 (footnote omitted) (emphasis added). Finally, we look to the plaintiff's allegations, not to the form of the pleading or the cause(s) of action asserted, to determine whether the doctrine of primary jurisdiction applies. *Pettko*, 39 A.3d at 480; *see also Poorbaugh v. Pa. Pub. Util. Comm'n*, 666 A.2d 744,

10

750 (Pa. Cmwlth. 1995) ("[A] court must look to the essence of the underlying claims, rather than to magic words, in determining where jurisdiction properly lies."), *appeals denied*, 678 A.2d 367 (Pa. 1996) and 698 A.2d 69 (Pa. 1995).

We now consider, as we did in *Pettko* and *Poorbaugh*, Petitioners' challenge to the scope of the trial court's referral to the administrative agency—here, the Department. Petitioners contend that theirs is a simple (not complex) common law civil action for breach of contract and breach of fiduciary duty, over which the Department has no particular expertise. Absent from the Second Amended Complaint, Petitioners contend, is any allegation that the Transactions are unfair or unreasonable, such that the standards set forth in the IHCA are implicated. Instead, Petitioners' challenge to the Transactions is two-fold— (1) they violate the terms of the Subscriber's Agreement, and (2) they violate Indemnity's duty as fiduciary to Exchange. Because the nominal parties to the lawsuit happen to be members of the same insurance holding company system, the IHCA does not vest the Department with jurisdiction over Petitioners' common law claims. Finally, Petitioners, in essence, contend that the referral to the Department was meaningless. The Commissioner's determination that the Transactions complied with standards set forth in the IHCA has no bearing on whether the Transactions violated the terms of the Subscriber's Agreement or whether Indemnity breached its fiduciary duty to Exchange. According to Petitioners, "neither fairness nor reasonableness are elements for those claims." (Pet'r's. Br. at 22.)

In response, the Department contends that Petitioners elevate the form of their claims over their substance. The Department argues that Petitioners' suit against Indemnity is nothing more than a challenge to an inter-company transaction

regulated by the Department under the IHCA. "Without a determination that such transactions violate an insurance law," the Department contends, "it is unlikely that Petitioner[s] would be successful in [their] claims before the trial court." (Dep't Br. at 18.) The Department contends that the Commissioner only examined Petitioners' breach of contract and fiduciary duty claims in the context of determining violations of the IHCA. The Department notes that it decided a matter that squarely falls within the scope of its expertise, that being whether the Transactions violated the IHCA.

Indemnity contends that Petitioners brought their complaint in the name of one member of an insurance holding company system against another member of that same system, challenging regulated inter-company transactions. This, according to Indemnity, supports the trial court's referral of the matter to the Department to determine compliance with the IHCA. Moreover, the Commissioner appropriately exercised the broad discretion afforded to her by considering the sub-issues of whether Indemnity breached the Subscriber's Agreement or its fiduciary duty to Exchange in order to assess whether the Transactions were "fair and reasonable" under the IHCA. Finally, Indemnity contends that the Department's regulatory authority over reciprocal exchanges under Article X extends to determinations of whether an attorney-in-fact violates the terms of a subscriber's agreement and, if so, determining the appropriate remedy.

All parties agree that the challenged Transactions are subject to a fairness and reasonableness review by the Department under Section 1405(a)(1)(i) of the IHCA. With respect to certain inter-company transactions, the involved insurer must provide 30-days advance written notice of the transaction to the

Department (unless the Department approves a shorter period). Unless disapproved by the Department within that period, the inter-company transaction may proceed. Section 1405(a)(2) of the IHCA, 40 P.S. § 991.1405(a)(2). The transactions at issue here do not fall within any of the categories of inter-company transactions that require prior notice and review by the Department.

Nonetheless, transactions that are exempt from the prior notice and review provision of the IHCA do not necessarily escape Department scrutiny. Section 1406(a.1) of the IHCA[13] expressly empowers the Department to examine an insurer that is part of an insurance holding company system to determine compliance with the IHCA. In addition, Section 1410(c) of the IHCA[14] expressly addresses inter-company transactions exempt from prior notice and review by the Department:

> Whenever it appears to the [D]epartment that any insurer subject to this article or any director, officer, employe or agent thereof has engaged in any transaction or entered into a contract which is subject to [S]ection 1405 [of the IHCA] and which would not have been approved had such approval been requested, the [D]epartment may order the insurer to cease and desist immediately any further activity under the transaction or contract. After notice and hearing, the [D]epartment may also order the insurer to void any such contracts and restore the status quo if such action is in the best interest of the policyholders, creditors or the public.

---

[13] 40 P.S. § 991.1406(a.1).

[14] 40 P.S. § 991.1410(c).

13

There is no indication in the record before us that the Department has ever exercised its authority under these provisions of the IHCA to scrutinize the transactions that are the subject of Petitioners' Second Amended Complaint.

As a preliminary matter, we reject the notion, adopted by all parties in one form or another, that Petitioners' breach of contract claim is inextricably intertwined with regulatory review of the Transactions for fairness and reasonableness under the IHCA. Whether a particular transaction satisfies a regulatory standard does not necessarily preclude a subsequent civil action. *See Drain v. Covenant Life Ins. Co.*, 712 A.2d 273, 277-78 (Pa. 1998) (allowing tort claims relating to Department-approved transaction to proceed in common pleas court). For example, upon completing the construction of a home, it may be entirely fair and reasonable—in terms of time, materials, and effort—for a homebuilder to charge the buyer $500,000 for the construction of the home. Where the parties had entered into a contract for a sale price of $250,000, it would be a breach of contract for the homebuilder to demand more before tendering the completed home to the buyer. Similarly, within an insurance holding company system, it may be "fair and reasonable" for the attorney-in-fact to assess subscribers a premium finance fee or late fee and to retain all or a portion of the fees collected to offset the attorney-in-fact's costs and/or to compensate the attorney-in-fact for premium finance and collection services on behalf of a reciprocal insurance exchange. If, however, the attorney-in-fact entered into a contract that precludes such a practice, fair and reasonable as it may be, the attorney-in-fact would be in breach.

We acknowledge, then, based on the intent of the General Assembly expressed in the IHCA, that the Department possesses both the jurisdiction and the

14

special competency to review and decide whether an inter-company transaction within an insurance holding company system is both fair and reasonable. We also recognize, as set forth above, the authority of the Department to interpret and enforce other provisions of the IHCA. The issue before us is whether the Second Amended Complaint purports to challenge any of these matters within the Department's regulatory authority and expertise under the IHCA.

Although the parties have cited several cases to support their respective positions, we find most instructive the Pennsylvania Supreme Court's decision in *Drain*. In 1994, the Pennsylvania Insurance Commissioner granted regulatory approval under the IHCA to the merger of Covenant Life Insurance Company (Covenant) and Provident Mutual Life Insurance Company (Provident).[15] Following that approval, Covenant policyholders initiated a suit in the court of common pleas against Covenant and its directors. In the first count of their complaint, the policyholders sought to assert a derivative action on Covenant's behalf, alleging breaches of fiduciary duty, waste, and abuse of control by the directors in connection with effectuating the merger. In the second count, titled a claim "for fundamental unfairness of the merger," the policyholders asserted a class action claim on behalf of all policyholders for breaches of fiduciary duties and failure to disclose material facts relative to the merger. The policyholders also contended that the directors engaged in tactics that resulted in an unfair merger. *Drain*, 712 A.2d at 274-75.

---

[15] *See* Section 1402 of the IHCA, 40 P.S. § 991.1402 (requiring Department approval of acquisitions of control of or merger or consolidation with domestic insurer).

The defendants filed preliminary objections, challenging, *inter alia*, the trial court's jurisdiction over the policyholders' claims. The common pleas court sustained the preliminary objection. It held that the policyholders' claims related to the "fairness" of the merger, which was a matter already decided by the Pennsylvania Insurance Commissioner when she reviewed and approved the transaction.[16] In the common pleas court's view, policyholders could not collaterally attack the Insurance Commissioner's approval through a separate civil action in the common pleas court; rather, they should have appealed the approval of the merger to this Court. The Pennsylvania Superior Court reversed, rejecting the common pleas court's view that the claims in the complaint fell within the Insurance Commissioner's jurisdiction.

On further appeal by allowance, the Pennsylvania Supreme Court affirmed the Superior Court's decision. The Supreme Court noted that although the IHCA provides for Department approval or disapproval of proposed mergers, it does not "explicitly provide a mechanism for the . . . Department to address alleged torts incident to a merger nor does it expressly grant authority to order a remedy for tortious conduct." *Id.* at 276. Citing with approval this Court's decision in *Trustees of the Presbytery v. Provident Mutual Life Insurance Company*, 685 A.2d 635 (Pa. Cmwlth. 1996), the Supreme Court recognized "statutory limits" to the Department's authority, which placed both tort claims and claims for corporate

---

[16] Under Section 1402(f)(1) of the IHCA, 40 P.S. § 991.1402(f)(1), the Department may only disapprove a filing for seven specified reasons. One of those reasons is if the Department finds that the plans or proposals submitted to the Department "are unfair and unreasonable." Section 1402(f)(1)(iv).

16

malfeasance outside of the Department's particular and specialized expertise. *Id.* at 276-77. The Supreme Court then opined:

> The resolution of the present dispute thus depends upon whether the policyholders' Complaint collaterally attacks the Insurance Commissioner's approval of the merger based upon insurance laws or whether it seeks to have the trial court adjudicate tort claims incidental to the merger. We agree with the Superior Court that the Complaint seeks relief for alleged torts and thus jurisdiction lies in the Court of Common Pleas.

*Id.* at 277. In analyzing the complaint, the Supreme Court noted that the policyholders alleged breaches of fiduciary duty by failing to consider fully and fairly the impact of the merger transaction upon policyholders and by failing to disclose information in the proxy statement issued before the merger. It then concluded:

> While the Complaint contains allegations about the fairness of the merger as well as the consideration that Provident paid for Covenant's surplus under the terms of the merger plan, *when read as a whole*, the claims against Appellants are for alleged improprieties in consummating the merger. If as this litigation proceeds, it becomes apparent that the policyholders in fact seek to challenge the Commissioner's approval of the merger, the case shall be dismissed. The face of the Complaint, however, alleges tort claims that do not involve the consideration of insurance laws. Claims for breach of corporate fiduciary duties are properly before the trial court. As such, the preliminary objection based upon lack of jurisdiction may not be sustained.

*Id.* at 277-78 (emphasis added).

We acknowledge differences between this matter and *Drain*. In *Drain* the jurisdictional issue came down to whether the plaintiff policyholders' lawsuit was, in effect, a collateral attack on the Department's approving determination under the IHCA. *Drain*, then, does not address the issue of primary jurisdiction.

17

Here, by contrast, the Transactions were not subject to any prior notice to and review by the Department under the IHCA. Indeed, the Department did not review the Transactions under the IHCA until after Petitioners filed their suit in the trial court and then only upon referral by the trial court to the Department under the doctrine of primary jurisdiction. Nonetheless, in addressing the question of subject matter jurisdiction, the Supreme Court in *Drain* drew a line between the Department's regulatory jurisdiction over transactions under the IHCA and civil matters in the common pleas court that, though related to the reviewed and approved transactions, do not implicate the Department's specialized regulatory expertise.

As noted above, Petitioners' six-count pleading essentially advances three causes of action: (1) breach of the Subscriber's Agreement; (2) breach of fiduciary duty; and (3) unjust enrichment. The unifying allegation that is at the base of each of these three claims is that Indemnity improperly retained all or a portion of the Service Charges and Added Service Charges collected from Exchange subscribers. The focal point of the alleged impropriety in the breach of contract claims is the Subscriber's Agreement, which Petitioners contend limits the amount of compensation that Indemnity may receive for its attorney-in-fact services. The focal point of the alleged impropriety in the breach of fiduciary duty and unjust enrichment claims is Petitioners' theory that Indemnity had a duty to act in Exchange's best interest and not to maximize Indemnity's own profit.

We agree with Petitioners that the question of whether Indemnity breached the Compensation Provision of the Subscriber's Agreement is not a complex matter that requires the special expertise of the Department. It is a matter of contract interpretation and fact finding, both of which are matters that fall within

18

the competence of our trial courts. Although we acknowledge Indemnity's contention that Article X requires an attorney-in-fact to file with the Department a copy of the document conferring powers on the attorney-in-fact to act for the reciprocal insurance exchange,[17] we see no provision in the law that grants the Department exclusive power and authority to hear and decide questions of whether the attorney-in-fact has breached the terms of that filed document. Further, in reviewing the Commissioner's analysis of Petitioners' breach of contract claim, (Declaratory Op. at 76-78), we find no indication that the Commissioner relied on any particular specialized expertise in interpreting the relevant provisions in the Subscriber's Agreement. Rather, she purported to rely only on principles of contract interpretation embedded in our common law.

In terms of Petitioners' breach of fiduciary duty and unjust enrichment claims, they are similar in kind to the claims the Supreme Court addressed in *Drain*. Again, the Transactions may have been entirely fair and reasonable under the IHCA. Petitioners, however, maintain that Indemnity's obligation as fiduciary to Exchange and the terms of the Subscriber's Agreement precluded Indemnity from entering into these (and perhaps others) quite possibly "fair and reasonable" transactions for Indemnity's own benefit. As the Supreme Court noted in *Drain*, the IHCA affords the Department the authority to review and approve or disapprove certain transactions within an insurance holding company system, but it "does not explicitly provide a mechanism for the . . . Department to address alleged torts incident to" such transactions. *Drain*, 712 A.2d at 276.

---

[17] Section 1004(d) of Article X, 40 P.S. § 964(d).

19

The words "Intercompany Transactions" do appear in the Second Amended Complaint, along with allegations regarding "fair dealing." When read as a whole, however, the Second Amended Complaint does not appear to challenge the fairness and reasonableness of the Transactions from a commercial or even regulatory standpoint. In drawing this conclusion, we expressly bind Petitioners to their representation in their brief: "Nowhere in the Second Amended Complaint did Exchange allege that the Transactions were somehow unfair or unreasonable . . . ." (Pet'r's. Br. at 21.) Moreover, we see nothing in the Second Amended Complaint that calls into question Indemnity's compliance with the other statutory standards set forth in the IHCA which the Commissioner addresses in her Declaratory Opinion and Order.

For the reasons set forth above and based upon our reading of the Second Amended Complaint as a whole, we conclude that Petitioners' allegations of impropriety relating to the Transactions do not fall within the Department's jurisdiction and are not so complex that they require the special competency of the Department. *Elkin*, 420 A.2d at 377.[18] Accordingly, and consistent with our disposition in *Poorbaugh* where we reached a similar conclusion about the Public Utility Commission's exercise of primary jurisdiction, the Declaratory Opinion and Order of the Commissioner is vacated and this matter is remanded to the

---

[18] We note here that this case before the trial court is still in the early pleading stages. If, as the litigation proceeds, it becomes apparent to the trial court that Petitioners do, in fact, assert a claim or seek relief that implicates the Department's jurisdiction and authority under the IHCA or any other insurance law or regulations, referral under the doctrine of primary jurisdiction may be appropriate at that point. *See Drain*, 712 A.2d at 278 ("If as this litigation proceeds, it becomes apparent that the policyholders in fact seek to challenge the Commissioner's approval of the merger, the case shall be dismissed.").

Department for transfer back to the trial court for further proceedings, including disposition of Indemnity's remaining preliminary objections.[19]

_____
P. KEVIN BROBSON, Judge


Judge Cohn Jubelirer dissents.

_____

[19] Based upon our determination with respect to Petitioners' threshold jurisdictional issue, we need not address the other issues raised on appeal.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Erie Insurance Exchange,     :
an unincorporated association, by  :
Joseph S. Sullivan and Anita Sullivan, :
Jenna L. DeBord, and Patricia R.  :
Beltz, trustees ad litem, and/or as  :
members of Erie Insurance Exchange, :
       Petitioners  :
            :
     v.      : No. 872 C.D. 2015
            :
Pennsylvania Insurance Department,  :
      Respondent  :

## **O R D E R**


AND NOW, this 27th day of January, 2016, the Declaratory Opinion and Order of the Pennsylvania Insurance Commissioner dated April 29, 2015, is VACATED, and the matter is REMANDED to the Pennsylvania Insurance Department for transfer back to the Court of Common Pleas of Fayette County for further proceedings.

Jurisdiction relinquished.


         _____
         P. KEVIN BROBSON, Judge