NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2774
_____

PATRICIA R. BELTZ; JOSEPH S. SULLIVAN; ANITA SULLIVAN, Individually and
on behalf of all others similarly situated, and derivatively on behalf of nominal defendant
Erie Insurance Exchange,

Appellants

v.

ERIE INDEMNITY COMPANY; KAJ AHLMANN; JOHN T. BAILY; SAMUEL P.
BLACK, III; J. RALPH BORNEMAN, JR.; TERRENCE W. CAVANAUGH; WILSON
C. COONEY; LUANN DATESH; PATRICIA A. GOLDMAN; JONATHAN HIRT
HAGEN; THOMAS B. HAGEN; C. SCOTT HARTZ. SAMUEL P. KATZ.
GWENDOLYN KING; CLAUDE C. LILLY, III; MARTIN J. LIPPERT; GEORGE R.
LUCORE; JEFFREY A. LUDROF; EDMUND J. MEHL; HENRY N. NASSAU;
THOMAS W. PALMER; MARTIN P. SHEFFIELD; SETH E. SCHONFIELD;
RICHARD L. STOVER; JAN R. VAN GORDER; ELIZABETH A. HIRT VORSHECK;
HARRY H. WEIL; ROBERT C. WILBURN; ERIE INSURANCE EXCHANGE,
Nominal Defendant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 1-16-cv-00179)
District Judge: Honorable Barbara Jacobs Rothstein
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 2, 2018

Before: SMITH, *Chief Judge*, HARDIMAN, and
RESTREPO, *Circuit Judges*.

(Filed: May 10, 2018)

_____

OPINION[*]

_____

HARDIMAN, *Circuit Judge*.

This appeal comes to us from an order of the District Court that dismissed state law claims filed by a putative class of subscribers of Erie Insurance Exchange (the Exchange). We will affirm.

I

The Exchange is a subscriber-owned reciprocal insurance exchange organized under Pennsylvania law. Since the Exchange itself is unincorporated and has no officers or employees, its affairs are managed by the Erie Indemnity Company (Indemnity). The relationship among the Exchange, its subscribers, and Indemnity is governed in large part by a written Subscriber's Agreement. The Subscriber's Agreement appoints Indemnity as each subscriber's attorney-in-fact and provides that Indemnity will "retain up to 25% of all premiums written or assumed" by the Exchange, "as compensation for" serving in that role. App. 110. This case is the latest skirmish in a long-running dispute over whether Indemnity may take compensation from the Exchange beyond that described in the Subscriber's Agreement.

Plaintiffs sued Indemnity and more than two dozen of its current and former directors in the United States District Court for the Western District of Pennsylvania.

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

They asserted direct claims for breach of the Subscriber's Agreement, breach of fiduciary duty, and conversion, along with derivative claims on behalf of the Exchange for conversion, breach of fiduciary duty, and unjust enrichment. The District Court dismissed the complaint for failure to state a claim, and Plaintiffs filed this appeal.

II

Indemnity is a publicly-traded Pennsylvania corporation overseen by a Board of Directors. Plaintiffs allege that as a practical matter Indemnity is controlled by a small group of individuals from the family of company founder H.O. Hirt. Upon Hirt's death in 1982, ownership of Indemnity's voting shares passed to trusts controlled by Hirt's children. The Hirt family trusts still own enough of those shares to determine the outcome of any shareholder vote, and the Board elected by those votes is mostly made up of Hirt family members and their close associates. Plaintiffs claim that insiders on Indemnity's Board paid themselves money that belonged to the Exchange. The complaint alleges that Defendants misappropriated two categories of funds, Service Charges and Additional Fees.

The Exchange levies a Service Charge on subscribers who elect to pay their premiums in installments rather than in a lump sum. Those Service Charges are deposited into the Exchange's accounts, rather than Indemnity's, and until 1997 that's where they would stay, treated as ordinary "revenue . . . available for the ultimate benefit of all Subscribers." App. 90 (Compl.¶¶ 69–70). But beginning in the fall of that year, "[t]he Directors approved the taking of a portion of the Service Charges" from the Exchange. App. 90 (Compl. ¶¶ 71–73). That practice continued until 1999, when "Indemnity began

3

taking *all* of the Service Charges revenue." App. 90 (Compl. ¶ 74). Plaintiffs allege that since 1999 Indemnity has continued, with the Board's approval, to "take for itself all of the Service Charges revenue which otherwise would have been retained by Exchange." App. 90–91 (Compl. ¶¶ 75–76).

In addition to premiums and Service Charges, the Exchange also charges what Plaintiffs term Additional Fees. Additional Fees are assessed "for checks or other payments returned unpaid, for cancellation notices issued due to non-payment of a policy, and for reinstatements of policies following a lapse in coverage after non-payment cancellations." App. 91 (Compl. ¶ 77). Like the Service Charges, Additional Fees are initially paid to the Exchange and later transferred to Indemnity with the approval of the Board. Plaintiffs allege that since 2008 that arrangement has siphoned off revenue that would otherwise "be available for the ultimate benefit of [the] Exchange and the Subscribers." App. 91 (Compl. ¶ 80).

### III[1]

Four claims arising under Pennsylvania law are at issue: breach of contract, breach of fiduciary duty, conversion, and unjust enrichment. For the reasons that follow, we hold that the District Court did not err in concluding that Plaintiffs failed to state a claim.

---

[1] The District Court had jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), and we have jurisdiction under 28 U.S.C. § 1291. We review dismissals for failure to state a claim de novo, applying the same familiar pleading standards as did the District Court. *See Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018).

4

A

The District Court held that Plaintiffs' claim for breach of the Subscriber's Agreement fails because that contract's allocation of up to 25% of premiums to Indemnity "does not govern the separate and additional charges at issue" here. *Beltz v. Erie Indem. Co.*, 279 F. Supp. 3d 569, 580–81 (W.D. Pa. 2017).

Applying Pennsylvania law, "we must start with the language used by the parties in the written contract." *E.R. Linde Constr. Corp. v. Goodwin*, 68 A.3d 346, 349 (Pa. Super. Ct. 2013). We "will not imply a contract that differs from the one to which the parties explicitly consented," *id.*, and by its terms insurance premiums are the only funds governed by the Subscriber's Agreement. Though not itself an insurance policy, the Agreement obligates subscribers to "pay [their] policy premiums," App. 110 (Subscriber's Agreement § 1), empowers Indemnity to "collect premiums," *id.* (Subscriber's Agreement § 2), authorizes Indemnity to "retain up to 25% of all premiums," *id.* (Subscriber's Agreement § 3), and expressly limits how Indemnity may dispose of the remainder, *id.* By contrast, the Subscriber's Agreement is silent on Indemnity's collection and disposition of money from any other source. The express terms of the Agreement are detailed and speak only to premiums, and we decline Plaintiffs' invitation to infer from them additional restrictions on other funds.

B

Plaintiffs have forfeited their fiduciary duty claims by advancing a different argument on appeal than they did in the District Court.[2] Under our precedent, to preserve an argument on appeal, "a party must make the same argument in the District Court that [it] makes on appeal." *United States v. Joseph*, 730 F.3d 336, 341 (3d Cir. 2013); *see also Spireas v. Comm'r of Internal Rev.*, 886 F.3d 315, 321 n.9 (3d Cir. 2018) (explaining that *Joseph* applies to civil cases). Arguments are identical if they depend on the same legal rule or standard and the same facts. *Id.* at 342.

In the District Court, Plaintiffs "ma[d]e clear . . . that their claims involve[d] ongoing decisions . . . by Indemnity . . . every year." App. 484 (Opp'n to Mot. to Dismiss). Plaintiffs argued that Indemnity "actively decided, ***each and every year***, to unlawfully take and retain the Service Charges and Additional Fees." *Id.* In short, Plaintiffs' argument to the District Court was that the Board had committed "affirmative acts constitut[ing] a continuing . . . breach of Indemnity's fiduciary duties." *Id.*

Plaintiffs have inverted that theory on appeal. Instead of a series of "affirmative acts," Plaintiffs base their fiduciary duty claims on "a sustained or systematic failure of the board to exercise oversight." Opening Br. 40 (citations omitted). And with the new

---

[2] Defendants Thomas and Jonathan Hagen argue that the Plaintiffs lack standing to assert direct fiduciary duty claims. We disagree. As Plaintiffs point out, the Exchange's subscribers have agreed to mutual indemnification, such that money "taken from Exchange's accounts . . . result[s] in an injury to each Subscriber by diminishing the funds available to indemnify one another." Plaintiffs' stake in this litigation, although indirect, is concrete and specific enough to establish Article III standing.

theory come new facts: Plaintiffs now emphasize that there is no record that "the Board ever approved that Indemnity could take *all* of the Service Charges," and that the Board "never specifically approved, disapproved, or otherwise made any formal decision . . . as to the retention of the Additional Fees." *Id.* at 41–42.

Plaintiffs raise two points in response, neither of which persuades us to reach the merits or the timeliness of their fiduciary duty claims. First, they cite to four places in the record they contend adequately presented their "failure of oversight" argument to the District Court. Two of those citations are to allegations in the complaint rather than to arguments made in opposing dismissal. The other two citations are isolated references to the Board having "authorized and/or tacitly approved" a particular action. App. 472, 537. Particularly when compared to the overwhelming emphasis Plaintiffs put on their "affirmative acts" theory, those unexplained references were not enough to preserve a failed-oversight argument.

Plaintiffs' second argument—that we should decline to enforce their forfeiture because at the motion-to-dismiss stage the parties have not invested energy in discovery tailored to one legal theory or another—is equally unavailing. While Plaintiffs are correct that "ensuring . . . the necessary evidentiary development" is one purpose of the appellate waiver rule, Reply Br. 18, the rule also "promot[es] the finality of judgments and conserv[es] judicial resources [by] preventing district courts from being reversed on grounds that were never urged or argued before them." *In re Diet Drugs Prod. Liab. Litig.*, 706 F.3d 217, 226 (3d Cir. 2013). We decline to excuse the forfeiture to allow

7

Plaintiffs to raise an argument that is nearly the opposite of the one they made in the District Court. *Spireas*, 886 F.3d at 321 n.9 (citation omitted).

## C

We also agree with the District Court that the conversion claims against Indemnity are barred by Pennsylvania's two-year statute of limitations. *See* 42 Pa. Cons. Stat. § 5524(3). The limitations period began to run "when [Plaintiffs were] harmed and not when the precise amount or extent of damages [was] determined." *Adamski v. Allstate Ins. Co*, 738 A.2d 1033, 1042 (Pa. Super. Ct. 1999). The harms underlying the Plaintiffs' conversion claims had all materialized by 2008 at the latest—by that date it was the continuing practice of Indemnity to claim all of the disputed funds for itself. The Plaintiffs were well aware at the time that Indemnity claimed the monies at issue here, and they cannot avoid the statute of limitations now by asserting that Indemnity's continuing claim was really a string of separate conversions. *See id.* at 1042–43.

## D

Finally, we perceive no error in the District Court's conclusion that Plaintiffs are judicially estopped from pursuing their unjust enrichment claims. Judicial estoppel bars "a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S 742, 749 (2001) (citation omitted). In a related appeal to the Commonwealth Court from a decision of the Pennsylvania Department of Insurance, Plaintiffs disclaimed any allegation "that the Transactions were somehow unfair or unreasonable." *Erie Ins. Exch. ex rel. Sullivan v. Pa. Ins. Dep't*, 133 A.3d 102, 113 (Pa. Commw. Ct. 2016). The

8

Commonwealth Court—taking care to state that it was "expressly bind[ing]" Plaintiffs to that representation—held that the complaint in the state court action did not "challenge the fairness and reasonableness of the Transactions from a commercial or even regulatory standpoint." *Id.* That determination, in turn, was the linchpin of the court's decision vacating the Department's order for lack of jurisdiction. *Id.*

Having already prevailed in state court by representing that they do not challenge the fairness of the relevant payments, Plaintiffs may not argue the opposite to this Court. But that is exactly what they would have to do in order to press their unjust enrichment claims, since Pennsylvania law requires a showing of inequity in order to prevail. *Mark Hershey Farms, Inc. v. Robinson*, 171 A.3d 810, 817 (Pa. Super. Ct. 2017).

\*     \*     \*

We will affirm the judgment of the District Court.

9