**KMART OF PENNSYLVANIA L.P., Appellant**

v.

**MD MALL ASSOCIATES, LLC, Trading as MacDade Mall Associates, L.P., Appellee.**

Kmart of Pennsylvania L.P., Appellant

v.

MD Mall Associates, LLC, Trading as MacDade Mall Associates, L.P., Appellee.

Superior Court of Pennsylvania.

Argued April 15, 2008.
Filed Sept. 17, 2008.
Reargument Denied Nov. 20, 2008.

Stephen Novack, Chicago, IL, and Murray S. Eckell, Media, for appellant.

Michael P. Coughlin, Blue Bell, for appellee.

BEFORE: STEVENS, KLEIN, and POPOVICH, JJ.

OPINION BY STEVENS, J.:

¶ 1 Kmart of Pennsylvania, L.P. ("Kmart") appeals from the orders entered in the Court of Common Pleas of Delaware County on November 6, 2006 and December 5, 2006, which granted summary judgment in favor of MD Mall Associates, LLC, trading as MacDade Mall Associates, L.P. ("MacDade"), on both Kmart's Complaint for Declaratory Relief and MacDade's Complaint and Counterclaim for Ejectment. We reverse and remand for proceedings consistent with this decision.

¶ 2 This case involves a lease agreement ("Lease") between MacDade and Kmart, and the validity of MacDade's exercise of a

one-time option to terminate the Lease. The relevant facts and procedural history of this case are as follows: On December 10, 1982, Kmart Corporation, the Tenant of the property at issue, entered into a Lease with MacDade, the Landlord thereof. Thereafter, in 1999, Kmart Corporation assigned the Lease to Kmart, a wholly-owned subsidiary. Paragraph 19 of the Lease gives Kmart the right to assign the lease without MacDade's consent and provides, in pertinent part, that:

> Tenant shall not be obligated to conduct or to remain open for the conduct of any business in the Demised Premises. Tenant may assign this Lease or sublet the whole or any part of the Demised Premises, but if it does so, it shall remain liable and responsible under this Lease.

Lease entered 12/10/82 at Paragraph 19.

¶ 3 In accordance with the above provision, on June 29, 2004, Kmart entered into an Asset Purchase Agreement ("Agreement") with Sears, Roebuck and Co. ("Sears"), whereby, *inter alia*, Kmart agreed to sell and Sears agreed to purchase up to fifty-four (54) Kmart leases nationwide, including Kmart's Lease with MacDade, pending various conditions. By letters dated July 12, 2004, Kmart and Sears informed MacDade of the execution of the Agreement. Kmart's letter to MacDade read, in relevant part, as follows:

> On June 29, 2004, [Sears] and Tenant entered into an [Agreement] whereby Tenant agreed to assign to Sears, and Sears has agreed to assume from Tenant, certain leases, including the Lease. Enclosed is a copy of the form of Assignment and Assumption of lease which will be used to effectuate the assignment of the Lease. It is currently anticipated that the assignment of the Lease from Tenant to Sears **will occur** in September, 2004, subject to the satisfaction of certain conditions as set forth in the Agreement. Upon such assignment, Sears will sublease the Leased Premises back to Tenant for a term scheduled to expire in March, 2005 so that Tenant can undertake a store closing sale. Upon the expiration of such sublease, possession of the Leased Premises will be transferred to Sears.
>
> Pursuant to the terms of the Lease, Sears and Tenant hereby request Landlord's consent to the following:
>
> 1. The closing of business at the store located on the Leased Premises by Sears for up to ninety (90) days after the expiration of the sublease to Tenant and delivery of possession of the Leased Premises to Sears . . . for renovations and remodeling the store located on the Leased Premises; and
>
> 2. Tenant's undertaking a store closing sale.
>
> . . . .
>
> If Landlord agrees to the foregoing request, kindly countersign this letter and return it in the enclosed pre-paid Federal Express envelope. . . .

Kmart Letter dated 7/12/04 (emphasis added).

¶ 4 The above letter was accompanied by a letter from Sears, also dated July 12, 2004, which further acknowledged the Agreement between Kmart and Sears. The Sears letter read, in relevant part, as follows:

> We at Sears are excited about the many opportunities resulting from our recently announced transactions with Kmart, which include the assignment of your lease to Sears. The Sears name and operation will enhance the value of your property. . . .
>
> We look forward to converting and reopening your store under the Sears

name and driving more sales and traffic to your site through Sears' substantial marketing and advertising initiatives. I am confident that this is the beginning of a strong, long lasting relationship between you and Sears.

Please review the attached materials and return the enclosed consent letter to us as soon as possible so that we can begin the process.

Sears Letter dated 7/12/04.

¶5 On July 21, 2004, Kmart sent Mac-Dade a second letter ("July 21 Letter") in an attempt to clarify the July 12 Letter. It provided:

I wanted to follow up with respect to the status of our consent request letter dated July 12, and in particular wanted to see if there is any additional information that you need with respect to the proposed transaction with Sears. In addition, as previously indicated, we wanted to assure you and confirm that in the event this consent is not granted, Kmart would of course continue to occupy the premises and operate the store in accordance with its existing lease. Please contact me if there is anything further that you need from us relating to our request for consent

Kmart Letter dated 7/21/04.

¶6 Kmart's Lease with MacDade, though freely assignable, provides Mac-Dade with a one-time termination as set forth in Paragraph 20 of the Lease:

Should the Tenant at any time elect to discontinue the operation of its store, the Tenant shall give to the Landlord notice in writing of its intention to do so and in such event the Landlord shall have one option, to be exercised by notice in writing given to the Tenant within one hundred twenty (120) days after the date of mailing of the Tenant's aforesaid notice to the Landlord, to cancel and terminate this lease. If the Landlord exercises its said option, this lease shall cancel and terminate on the last day of the month next following the end of said one hundred twenty (120) day period and the Tenant shall be released from any further liability under this lease.

Lease entered 12/10/82 at Paragraph 20.

¶7 Pursuant to the provisions of Paragraph 20, by letter dated November 8, 2004, MacDade notified Kmart that it was exercising its one-time option to cancel and terminate the Lease based upon Kmart's notice of its intent to discontinue the operation of its store as per the July 12 Letter.

¶8 On November 23, 2004, Kmart commenced an Action for Declaratory Judgment, seeking, *inter alia*, a declaration that MacDade's purported termination of the Lease was null, void, and of no effect or force.[1] On January 21, 2005, MacDade filed a Complaint in Ejectment in the Court of Common Pleas of Delaware County, seeking to uphold the termination and eject Kmart from the premises. By Order dated July 11, 2005, these matters were consolidated.

¶9 Subsequently, on September 15, 2006, the parties moved for summary judgment. Following oral argument and briefing thereon, the court, by orders issued November 6, 2006, granted summary judgment in favor of MacDade on both Kmart's complaint for declaratory relief and Mac-Dade's claim for ejectment, finding that

---

1. MacDade filed preliminary objections to the above action on the basis of improper venue in that the premises at issue were located in Delaware County, but the action was commenced in Philadelphia County. The Court of Common Pleas of Philadelphia County sustained the objections and dismissed Kmart's action. The matter was transferred to Delaware County.

MacDade properly terminated the Lease in accordance with the terms thereof. Kmart filed a notice of appeal on November 27, 2006.

¶ 10 Thereafter, by Order issued December 4, 2006, the trial court approved a stipulation executed by Kmart and MacDade, which, *inter alia,* amended the November 6, 2006 Order that granted possession of the premises to MacDade. The December 4, 2006 Order added the following to the previous Order: "The Court hereby determines that an immediate appeal of the November 6, 2006 Order to the Pennsylvania Superior Court would facilitate resolution of the entire case." Order issued 12/4/06. Kmart then filed a second notice of appeal.[2]

¶ 11 Herein, Kmart presents the following issues for review:

A. Whether Pennsylvania's strong policy disfavoring forfeitures applies in this case?

B. Whether the July 12, 2004 letter to [MacDade] constituted a notice of Kmart's intent or election to discontinue the operation of Kmart's store, thus invoking [MacDade's] lease termination option?

C. If the July 12, 2004 letter did constitute a notice of Kmart's intent or election to discontinue the operation of Kmart's store, was Kmart's July 21, 2004 letter to [MacDade] nevertheless effective in withdrawing or repudiating such notice?

D. Whether the lease termination date of November 30, 2004 that was asserted in [MacDade's] November 8, 2004 termination letter was incorrect and premature, with the result that the November 8, 2004 letter was legally ineffective in terminating the lease?

Brief for Kmart at 8 (suggested answers and answers of the trial court omitted).

¶ 12 Initially, we note:

Our scope of review of a trial court's order disposing of a motion for summary judgment is plenary. Accordingly, we must consider the order in the context of the entire record. Our standard of review is the same as that of the trial court; thus, we determine whether the record documents a question of material fact concerning an element of the claim or defense at issue. If no such question appears, the court must then determine whether the moving party is entitled to judgment on the basis of substantive law. Conversely, if a question of material fact is apparent, the court must defer the question for consideration of a jury and deny the motion for summary judgment. We will reverse the resulting order only where it is established that the court committed an error of law or clearly abused its discretion.

*Grimminger v. Maitra,* 887 A.2d 276, 279 (Pa.Super.2005), *quoting Stanton v. Lackawanna Energy, Ltd.,* 820 A.2d 1256, 1258–1259 (Pa.Super.2003). "[Moreover,] we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Evans v. Sodexho,* 946 A.2d 733, 738 (Pa.Super.2008) (quotation omitted).

¶ 13 In addition, we are mindful that:

[A] lease is a contract and is [ ] to be interpreted according to contract principles. A fundamental rule in construing

---

**2.** The appeals were consolidated for purposes of review. In addition, Kmart filed a statement of matters complained of on appeal, to which the trial court issued an Opinion on June 20, 2007, and an Amended Opinion on July 11, 2007.

a contract is to ascertain and give effect to the intent of the contracting parties. It is firmly settled that the intent of the parties to a written contract is contained in the writing itself. When the words of a contract are clear and unambiguous, the meaning of the contract is ascertained from the contents alone.

*Mace v. Atlantic Refining & Marketing Corp.*, 567 Pa. 71, 80, 785 A.2d 491, 496 (2001) (internal citations and quotation marks omitted).

¶ 14 As a general rule, "[t]he law will not imply a different contract than that which the parties have expressly adopted." *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 198, 519 A.2d 385, 388 (1986). Courts are not to assume that the language contained in a contract was chosen carelessly or that the parties were ignorant of the meaning of the language they utilized. *Steuart v. McChesney*, 498 Pa. 45, 51, 444 A.2d 659, 662 (1982).

¶ 15 We turn first to Kmart's second question for review: "Whether the July 12, 2004 letter to [MacDade] constituted a notice of Kmart's intent or election to discontinue the operation of Kmart's store, thus invoking [MacDade's] lease termination option." Brief for Kmart at 8.

¶ 16 Prior to addressing this issue, we examine the precise language of Paragraph 20 of the Lease, which provides, in relevant part, that:

Should the Tenant at any time elect to discontinue the operation of its store, the Tenant shall give to the Landlord notice in writing of its intention to do so and in such event the Landlord shall have one option, to be exercised by notice in writing given to the Tenant within one hundred twenty (120) days after the date of mailing of the Tenant's aforesaid notice to the Landlord, to cancel and terminate this lease.

Lease entered 12/10/82 at Paragraph 20. As evidenced by this Paragraph, the Lease speaks of an election by the Tenant to discontinue operation of its store **and** the action of informing the Landlord of its intention to do so.

¶ 17 In the July 12 Letter, Kmart informed MacDade of its Agreement to assign to Sears the Lease in question. The Letter clearly provided, however, that the assignment of the Lease, which it was anticipated would occur in September of 2004, was "subject to the satisfaction of certain conditions as set forth in the Agreement." Prior to setting forth a number of the conditions to the proposed assignment, the Letter stated: "Pursuant to the terms of the Lease, Sears and [Kmart] hereby request Landlord's consent to the following[.]"

¶ 18 As evidenced by the July 12 Letter, the consent of MacDade to certain future occurrences specified therein was a condition of the Lease assignment to Sears. The securing of such consent apparently would, in turn, have led to an election by Kmart "to discontinue the operation of its store" as per Paragraph 20 of the Lease. In that consent by MacDade was not forthcoming, which presumably indicated its unwillingness to acquiesce to the enumerated conditions in the July 12 Letter, we find that Kmart did not "elect to discontinue the operation of its store" within the meaning of Paragraph 20 of the Lease. This finding is bolstered by Kmart's follow-up Letter of July 21 wherein, as set forth *supra*, Kmart clearly indicated as follows:

I wanted to follow up with respect to the status of our consent request dated July 12, and in particular wanted to see if there is any additional information that you need with respect to the **proposed** transaction with Sears. In addition, as previously indicated, we wanted to assure you and confirm that in the event

this consent is not granted, Kmart would of course continue to occupy the premises and operate the store in accordance with its existing lease....

Kmart Letter dated 7/21/04 (emphasis added).

¶ 19 Evident from the foregoing is that, absent the grant of requested consent by MacDade to specified conditions, Kmart would not discontinue operation of its store via assignment of the Lease to Sears. In that such consent was not given, Kmart did not elect to discontinue operation of its store and Kmart's July 12 Letter did not inform MacDade of an intent to do so.[3] Thus, MacDade's right to terminate the Lease did not arise. Consequently, we reverse the orders of the trial court, which granted summary judgment in favor of MacDade, and remand for further proceedings.

¶ 20 Orders Reversed; Case Remanded; Jurisdiction Relinquished.

3. In view of the foregoing determination, we need not address Kmart's remaining questions for review.