**E.R. LINDE CONSTRUCTION CORP., Appellant**

v.

**William R. GOODWIN, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 26, 2013.

Filed June 7, 2013.

---

Alfred G. Howell, Honesdale, for appellant.

William L. Byrne, Wilkes–Barre, for appellee.

BEFORE: PANELLA, J., ALLEN, J., and PLATT, J.*

OPINION BY PANELLA, J.

Appellant, E.R. Linde Construction Corporation ("Linde"), appeals from the order entered May 8, 2012, by the Court of Common Pleas of Wayne County, which granted Appellee, William R. Goodwin's motion for summary judgment. At stake in this case is whether Linde properly exercised its right of first refusal on an offer for real estate owned by Goodwin. The offer presented to Linde included a purchase not only of the real estate, but also of various other assets, including intellectual property, business vehicles, and mining equipment. Linde purported to exercise its right only as to the real estate and refused to pay the purchase price allocated to the other assets. The trial court concluded that Linde failed to properly exercise its right by failing to accept the terms of the offer in its entirety. After careful review, we conclude that the language of the right of first refusal and longstanding precedent in the Pennsylvania Courts contradicts the trial court's conclusion, and we therefore reverse.

The factual background of this case is largely uncontested. In 2003, Linde entered into an agreement with Goodwin, John Malti, and Ronald Malti ("Lessors") to lease from the Lessors a property commonly known as Middlecreek Quarry. Paragraph 16.1 of the lease agreement contains the following provision for a right of first refusal:

_____

* Retired Senior Judge assigned to the Superior Court.

Lessors hereby grant to Lessees a Right of First Refusal to purchase any portion, up to the whole thereof, of the Premises, i.e. the 87.3 acres.... [I]f [Linde] choose[s] to exercise the Right of First Refusal, they will have the right to purchase said property under the same terms as the Agreement of Sale provided to them.

Lease Agreement, 3/11/2003, at 8. The first page of the lease agreement defines the "Property" as the parcel described in an attached deed, and the "Premises" as the portion of the property approved for mining in addition to another parcel containing an asphalt plant. *See id.*, at 1. In 2007, John Malti and Ronald Malti conveyed their interest Middlecreek Quarry to Goodwin, leaving Goodwin as the sole owner of the property.

Thereafter, in early 2009, Goodwin notified Linde of an offer for the property from George Cabel. Under the terms of the offer, Cabel offered to pay $400,000.00 for the real estate, and $17,512,469.00 for "equipment, furniture, inventor, debt assumption, and liabilities." Sales Agreement, 1/26/2009, at Schedule "D". By letter dated March 23, 2009, counsel for Linde indicated that Linde was exercising its right of first refusal for the real estate:

First, if you carefully read the Lease Agreement the right of first refusal is limited to the land only. [Cabel's offer] prices that land at $400,000.00. In ac-

cordance with the Lease, we are not obligated to purchase any other equipment from either Mr. Goodwin or any of his companies. You are right however that if any part of the real estate is to be sold, my client has a right of first refusal as set forth in the Lease.

Letter from Lee C. Krause, Esq., dated 3/23/2009, at 1. Attorney Krause also enclosed with this letter the 5% down payment required by the lease agreement. Goodwin treated Linde's actions as insufficient to consummate the right of first refusal, noting that it was not an acceptance of the same terms offered by Cabel. Goodwin also returned the 5% down payment.

Linde subsequently filed a complaint asserting claims for declaratory judgment and specific performance under the lease agreement. Discovery ensued, and on February 28, 2012, Goodwin filed a motion for summary judgment. Following argument and the submission of briefs, on May 8, 2012, the trial court granted Goodwin's motion and dismissed Linde's complaint with prejudice. Linde filed the instant, timely appeal on June 8, 2012.[1]

On appeal, Linde raises two issues for our review:

A. Whether a right of first refusal as to the conveyance of a property can be defeated by including that prop-

---

1. On May 22, 2012, Linde filed a motion for reconsideration in the trial court. By order dated June 13, 2012, the trial court purported to grant reconsideration of its May 8, 2012 order, and on June 19, 2012 entered an order denying Goodwin's motion for summary judgment. The trial court, however, was without jurisdiction to enter these two orders. The trial court retained jurisdiction to grant reconsideration for 30 days from the date the May 8th order was entered on the docket, May 10, 2012. *See* Pa.R.A.P., Rule 1701(b)(3), 42 Pa. Cons.Stat.Ann. The thirti-

eth day from May 10, 2012 fell on Saturday, June 9, 2012, so by rule, the trial court had until Monday, June 11, 2012 to grant reconsideration. *See* Pa.R.Civ.P., Rule 106, 42 Pa. Cons.Stat.Ann. As the trial court did not explicitly grant reconsideration by June 11, 2012, it was divested of jurisdiction over the case. *See* Pa.R.A.P., Rule 1701 *Comment* ("If the trial court ... fails to enter an order 'expressly granting reconsideration' ... within the time prescribed by these rules ... the power of the trial court ... to act on the application for reconsideration is lost.").

erty in a multi-property or multi-asset transaction?

B. Whether this Honorable Court committed an error of law by dismissing the Complaint with prejudice even though Count III remains pending?

Appellant's Brief, at 1. Both issues challenge the trial court's grant of Goodwin's motion for summary judgment.

Our standard of review of a challenge to the grant of summary judgment is well established:

> [We] may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. *See* Pa.R.C.P., Rule 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*ToDay's Housing v. Times Shamrock Communications, Inc.*, 21 A.3d 1209, 1213 (Pa.Super.2011) (citation omitted).

■ In its first issue on appeal, Linde contends that the trial court erred in concluding that, as a matter of law, Linde had failed to consummate its right of first refusal. As the right of first refusal at issue in this case was granted *via* a contract, standard principles of contract construction apply. *See Delaware River Preservation Co., Inc. v. Miskin*, 923 A.2d 1177, 1181 (Pa.Super.2007). Interpretation of a contract poses a question of law and our review is plenary. *See Charles D. Stein Revocable Trust v. General Felt Industries, Inc.*, 749 A.2d 978, 980 (Pa.Super.2000). "In construing a contract, the intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." *Id.*

■ To give effect to the intent of the parties, we must start with the language used by the parties in the written contract. *See Szymanowski v. Brace*, 987 A.2d 717, 722 (Pa.Super.2009), *appeal denied*, 606 Pa. 688, 997 A.2d 1179 (2010). Generally, courts will not imply a contract that differs from the one to which the parties explicitly consented. *See Kmart of Pennsylvania, L.P. v. M.D. Mall Associates, LLC*, 959 A.2d 939, 944 (Pa.Super.2008), appeal denied, 602 Pa. 667, 980 A.2d 609 (2009). We are not to assume that the language of the contract was chosen carelessly or in ignorance of its meaning. *See id.*

■ Where the language of the contract is clear and unambiguous, a court is required to give effect to that language. *See Prudential Property and Casualty Ins. Co. v. Sartno*, 588 Pa. 205, 212, 903 A.2d 1170, 1174 (2006). Contractual language is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Hutchison v. Sunbeam Coal*

*Co.,* 513 Pa. 192, 201, 519 A.2d 385, 390 (1986).

■ As quoted above, the lease agreement in this case provided a right of first refusal to purchase the "Premises," or any portion thereof. The lease agreement defined the "Premises" as a portion of a parcel of real estate defined by an attached deed in conjunction with another parcel of real estate. Furthermore, the paragraph that granted the right of first refusal explicitly refers to the Premises in terms of real estate: "the 87.3 acres." The language employed by the lease agreement is clear and unambiguous. The parties clearly intended to create a right of first refusal in the real estate, and not in any other assets owned by the Lessors. Based upon the unambiguous language of the lease agreement, we conclude that the trial court erred in holding that, as a matter of law, Linde had failed to consummate its right of first refusal.

Long-standing precedent in the courts of Pennsylvania buttresses this conclusion. Linde points to this Court's precedent that stated that a right of first refusal cannot be "nullified simply by packaging the property for sale with another asset[.]" *Boyd & Mahoney v. Chevron U.S.A.,* 419 Pa.Super. 24, 614 A.2d 1191 (1992). However, it is important to note that in *Boyd,* the property owner argued that it need not even give the opportunity to exercise the right of first refusal to the right holder when the subject property was bundled with other properties. In the present case, Goodwin gave Linde the opportunity to exercise its right of first refusal; the issue here is whether Linde's actions in response to the opportunity were effective in consummating the right.

While *Boyd* is therefore distinguishable and not controlling on this case, the language employed is consonant with case law reaching back to the 1940s. In *Atlantic*

*Refining Co. v. Wyoming National Bank of Wilkes–Barre,* 356 Pa. 226, 51 A.2d 719 (1947), the Supreme Court of Pennsylvania addressed the lessee's, Atlantic Refining Company, right of first refusal that applied to "the demised premises" under a written lease. Atlantic leased only a portion of the subject parcel of real estate; other tenants leased the remaining portions. When the lessor bank advertised that it desired to sell the entire property at auction, Atlantic offered to buy its portion plus an additional six foot by six foot strip of the remaining portion. The bank refused this offer, and proceeded to auction.

At auction, a third party, Herman Jacobs, submitted the winning bid for the entire property. Atlantic subsequently sought to consummate its right of first refusal on the basis of Jacobs's bid. The bank then refused to transfer the property to either Atlantic or Jacobs, and both parties filed complaints in equity seeking title to the property. The trial court, sitting in equity, decreed that the bank was to transfer the property to Atlantic. On appeal, the Supreme Court of Pennsylvania held that Atlantic's right of first refusal did not encompass the entire property:

> Stated otherwise, while the bank's offer of [the property] as an entirety at the auction sale did not operate to impair or destroy Atlantic's option to purchase 'the demised premises', neither did it serve to enlarge Atlantic's rights so as to confer upon it a 'substantial interest' in the larger property whereof the 'demised premises' was but a part.

*Atlantic Refining Co.,* 356 Pa. at 232, 51 A.2d at 722–723 (citations omitted).

Pursuant to this reasoning, the Supreme Court held that neither Jacobs nor Atlantic were entitled to receive the property. *See id.,* 356 Pa. at 237–238, 51 A.2d at 725. Atlantic was not entitled to exercise its

right of first refusal, "for there has been no third party agreement or offer to buy just that property alone." *Id.* Nor was Jacobs entitled to enforce his agreement to purchase the entire property:

> Obviously, Jacobs may not maintain a bill for the specific performance of his agreement to purchase the entire property. As to a large portion thereof, a prior right to purchase outstands in another.

*Id.,* 356 Pa. at 236, 51 A.2d at 724.

Less than a decade later, the Supreme Court of Pennsylvania addressed a right of first refusal under similar circumstances. In *L.E. Wallach, Inc. v. Toll,* 381 Pa. 423, 113 A.2d 258 (1955), Toll, owner of the property in dispute, received an offer for the property as part of a package including two adjacent properties. L.E. Wallach, Inc. held a right of first refusal as to only the property in dispute. Wallach indicated that he had no interest in the adjacent lots, and that Toll should establish separate values for each lot for the purpose of the right of first refusal. Toll treated this as a failure to consummate the right of first refusal, and later sold the property pursuant to slightly modified conditions. Toll did not present this modified offer to Wallach.

The Supreme Court ultimately held that since Toll had not accepted the first offer, which was the only offer Toll presented to Wallach, Wallach's right of first refusal remained unimpaired. *See id.,* 381 Pa. at 429, 113 A.2d at 261. Therefore, title to the disputed property was to return to Toll, still subject to Wallach's right of first refusal. *See id.* In reaching this conclusion, the Supreme Court noted that "of course ... the lessee was not obliged to meet an offer for the purchase of the *three* properties." *Id.,* 381 Pa. at 427–428, 113 A.2d at 260 (emphasis in original).

More recently, this Court has also addressed the issue of consummation of a right of first refusal. In *Hahalyak v. A. Frost, Inc.,* 444 Pa.Super. 494, 664 A.2d 545 (1995), Hahalyak was a trustee for an office building in Pittsburgh. Frost was a tenant of one suite in the building, but held a right of first refusal over another suite, room 216, in the building. Shortly after granting Frost the right of first refusal, Hahalyak entered into a lease agreement for room 216 with another tenant of the same building. Hahalyak argued that Frost could not, *inter alia,* meet the terms of the offer from the third party as Frost was vacating a different suite in the building than the third party tenant.

The trial court in *Hahalyak* concluded that Hahalyak had violated the right of first refusal, and directed Hahalyak to execute a lease to Frost for the disputed suite. On appeal, this Court affirmed the trial court, citing to *Boyd* for the proposition that a right of first refusal cannot be nullified by packaging the subject property with assets that are not subject to the right of first refusal. *See Hahalyak,* 664 A.2d at 549.

In summary, we hold that when the contract which grants the right of first refusal is clear and unambiguous as to the property covered by the right, and absent any other language in the contract to the contrary, such a right cannot be nullified by including the covered property in a multi-asset sales agreement. Thus, Goodwin's attempt to package the covered property in this case, Middlecreek Quarry, with other assets valued at nearly 45 times the value of Middlecreek Quarry, did not extinguish Linde's right of first refusal. Furthermore, the sales agreement itself sets forth the value that Goodwin and Cabel assigned to Middlecreek Quarry: $400,000.00. As a result, there is no ambiguity as to the price Linde was required to

meet in order to consummate its right. Since Linde met that price, and provided the required down payment in a timely manner, we reverse the trial court's order granting summary judgment and remand for proceedings consistent with this opinion.

Order reversed. Jurisdiction relinquished.