J-A10010-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TODD SANT AND SUSAN SANT | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| BRANDING BRAND, INC. | |
| | No. 672 WDA 2015 |

Appeal from the Order Entered April 23, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): C.A. No. GD-15-000219

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PANELLA, J.

MEMORANDUM BY PANELLA, J.                    **FILED AUGUST 16, 2016**

Appellants, Todd and Susan Sant, appeal from the order sustaining the preliminary objections filed by Appellee, Branding Brand, Inc. ("Branding"), to their complaint claiming breach of contract and wrongful discharge of employment. The Sants argue that the trial court erred in ruling that they could not overcome Pennsylvania's presumption of at-will employment, as they alleged sufficient facts to establish the "additional consideration" exception to the presumption. We conclude that Branding's offer letter, signed by Todd, stating that the employment term was "at-will," controls, and therefore the additional consideration exception does not apply. We therefore affirm the trial court's order regarding the Sants' claims for breach of contract and promissory estoppel. We furthermore conclude that the gist of the action doctrine forecloses Susan's claim for loss of consortium.

However, we find that the trial court misapplied the law in addressing the Sants' claim for wrongful discharge and therefore reverse and remand for further proceedings on the wrongful discharge claim.

Given that this appeal arises from an order sustaining preliminary objections, the factual history of this matter is taken entirely from the allegations in the Sants' complaint. Todd was employed as a corporate controller for a successful company in McLean, Virginia. He enjoyed a stable, highly paid position that allowed him to participate in a lucrative stock program with yearly vesting rights.

He lived in Ashburn, Virginia, with his wife, Susan, and their young child. Susan suffers from a host of serious health issues, including fibromyalgia, Lyme disease, Meniere's disease, and chronic migraines. She had lengthy histories with her treating physicians in Virginia.

In October 2013, Todd accepted an offer from Branding to become their Vice President of Finance, a position based in Pittsburgh, Pennsylvania. Additionally, Branding indicated that it intended to promote Todd to Chief Financial Officer ("CFO") when its current CFO left, which was likely to happen in the near future. Branding extended the offer *via* an offer letter that Todd subsequently signed. This letter included a paragraph regarding term of employment.

> This offer does not fix a term of your employment. You have the right to terminate your employment at any time upon reasonable prior notice, for any reason (or no reason), and Branding Brand reserves the same rights.

Upon accepting Branding's offer, the Sants proceeded to sell their Virginia residence at below-market price due to the time period involved. They built a new home near Pittsburgh at substantial cost. Furthermore, Todd sacrificed approximately $60,000 in additional vesting rights in his former employer's stock program.

Todd began working for Branding in late October 2013. In August 2014, he was promoted to CFO of Branding. In November 2014, he attended Branding's quarterly Board of Directors meeting, at which Branding's Chief Executive Officer ("CEO"), Christopher Mason, represented that Branding had sold over $50,000 in recurring revenue to new clients in the third quarter. Todd knew that Mason had already backdated those sales to the second quarter. Apart from the backdated contracts, Todd knew that Branding had not sold any new contracts in the third quarter.

Shortly thereafter, Todd confronted Branding's Vice President of Operational Reporting and Analysis, Allen Lu, regarding Mason's misrepresentation to the Board of Directors. Later that same day, Branding terminated Todd's employment without explanation.

The Sants subsequently filed a complaint asserting causes of action sounding in breach of contract, promissory estoppel, wrongful discharge, and loss of consortium. Branding filed preliminary objections in the form of demurrers to all counts. After receiving briefs, the trial court sustained the

preliminary objections and dismissed the Sants' complaint. This timely appeal followed.

Our standard of review where there is a challenge to the sustaining of preliminary objections in the nature of a demurrer is well-settled. The material facts set forth in the complaint and all inferences reasonably deducible there from are admitted as true. ***See Price v. Brown***, 545 Pa. 216, 221, 680 A.2d 1149, 1151 (1996). "The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it." ***Id***. (citation omitted).

On appeal, the Sants first argue that the trial court erred in concluding that Todd was an at-will employee of Branding. While the Sants expend significant effort in arguing whether they have overcome the at-will presumption, we note that this case does not involve a presumption. Rather, there is a written contract in the form of the signed offer letter. An incomplete agreement can still be judicially enforced so long as the intent to contract is clear and "there is a reasonably certain basis upon which a court can provide an appropriate remedy." ***Helpin v. Trustees of the University of Pennsylvania***, 969 A.2d 601, 610-611 (Pa. Super. 2009) (citation omitted). Deficiencies in the terms of the agreement can be remedied through reference to the actions taken by the parties during the course of

the contract. **See id**. Though explicitly incomplete, neither party contends that there was no intent to contract, and thus, the offer letter represents the best evidence of the parties' intentions on the terms contained within it. **See Commonwealth ex rel. Kane v. UPMC**, 129 A3d 441, 463 (Pa. 2015).

We therefore begin our review by considering the meaning and effect of the signed offer letter. We must construe it as we would construe any other contract. Interpretation of a contract poses a question of law and our review is plenary. **See Charles D. Stein Revocable Trust v. General Felt Industries, Inc.**, 749 A.2d 978, 980 (Pa. Super. 2000). "In construing a contract, the intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." **Id**. (citation omitted).

To give effect to the intent of the parties, we must start with the language used by the parties in the written contract. **See Szymanski v. Brace**, 987 A.2d 717, 722 (Pa. Super. 2009). Generally, courts will not imply a contract that differs from the one to which the parties explicitly consented. **See Kmart of Pennsylvania, L.P. v. M.D. Mall Associates, LLC**, 959 A.2d 939, 944 (Pa. Super. 2008). We are not to assume that the language of the contract was chosen carelessly or in ignorance of its meaning. **See id**.

Where the language of the contract is clear and unambiguous, a court is required to give effect to that language. *See Prudential Property and Casualty Ins. Co. v. Sartno*, 903 A.2d 1170, 1174 (2006). Contractual language is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Hutchison v. Sunbeam Coal Co.*, 519 A.2d 385, 390 (Pa. 1986) (citation omitted). "This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999) (citations omitted).

"Courts have consistently held that, under Pennsylvania law, the existence of a disclaimer expressly disavowing any intent to contract are sufficient to retain the at-will presumption." *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 943 (Pa. Super. 2011) (quoting *McGough v. Broadwing Communications, Inc.*, 177 F.Supp.2d 289 (D.N.J. 2001)). Here, the offer letter explicitly stated that the employment relationship would be at-will. Todd signed the offer letter. He then worked for Branding for over a year. The parties thus explicitly provided for an at-will employment. There is simply no opportunity or need to apply the presumption. We therefore conclude that the additional consideration exception has no relevance to the

facts alleged by the Sants. The trial court properly sustained the preliminary objection to this claim.

Similarly, we conclude that the Sants' second challenge, to the trial court's ruling on their claim for promissory estoppel, is unavailing. The Sants explicitly condition this argument on their assertion that Todd was not an at-will employee. *See* Appellants' Brief, at 26. We have already concluded otherwise. Accordingly, the Sants' second argument merits no relief.

Next, the Sants contend that the trial court erred in sustaining the preliminary objection to their wrongful discharge claim. Pursuant to a wrongful discharge claim, an otherwise at-will employee may seek redress from his former employer if he can establish that the employer (1) required him to commit a crime, (2) prevented him from complying with a duty imposed by statute, or (3) discharged him despite being specifically prohibited from doing so by a statute. *See Hennessy v. Santiago*, 708 A.2d 1269, 1273 (Pa. Super. 1998). The Sants assert that Branding discharged Todd when he refused to engage in a conspiracy to misrepresent the company's earnings to investors.

In their complaint, the Sants assert that Mason, Branding's CEO, misrepresented the company's revenue to the company's board of directors. *See* Complaint, filed 1/6/15, at ¶¶ 21-24. If true, these facts would establish that Mason had committed a crime. *See* 18 Pa.C.S.A. § 4107(a)(8). Furthermore, the Sants have pled that Todd was CFO, and admit that he

knew that Mason's statements were false and misleading. Thus, he could have arguably been subject to criminal charges as an accomplice or a conspirator. Finally, the Sants have pled that Todd was discharged because he notified the company's vice president of operational reporting analysis of the misrepresentations.

Given our standard of review, we must accept these pleadings as true. Viewed as true, these pleadings establish that Todd was discharged for refusing to expose himself to criminal liability. The Sants have thus pled sufficient facts to survive a demurrer to this claim, and the trial court erred in sustaining the preliminary objection.

Finally, the Sants contend that the trial court erred in sustaining the preliminary objection to Susan's claim for loss of consortium. The trial court held that loss of consortium claims require a physical injury to a spouse, and therefore the Sants' assertion of purely emotional injuries to Todd were insufficient as a matter of law. We need not reach the precise issue identified by the trial court, however, as we conclude that the loss of consortium claim is barred by the gist of the action doctrine. *See The Brickman Group, Ltd. v. CGU Insurance Company, Inc.*, 865 A.2d 918, 928 (Pa. Super. 2004) ("We are not bound by the trial court's rationale, and may affirm on any basis.").

Pennsylvania courts have long recognized the gist of the action doctrine, which operates to keep breach of contract and negligence claims as

separate and distinct causes of action. In essence, the doctrine draws a line between tort actions, which are based upon breaches of duties imposed as a matter of social policy, and contract actions, which are based upon breaches of duties imposed by mutual consensus. *See Pittsburgh Const. Co. v. Griffith*, 834 A.2d 572, 581-582 (Pa. Super. 2003). The doctrine's purpose is to maintain the distinction between the theories of breach of contract and tort, and it precludes a plaintiff from recasting ordinary breach of contract claims into tort claims. *See Bash v. Bell Telephone Co. of Pennsylvania*, 601 A.2d 825, 829 (Pa. Super. 1992).

The application of the doctrine is an issue of law. *See e-Toll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 15 (Pa. Super. 2002). Here, while the Sants have raised a public policy exception to the otherwise at-will employment relationship, the gist of the action is clearly contractual in nature. Absent the employment agreement, Branding would have no duties to the Sants. Tort remedies are thus precluded in this action, and the trial court properly sustained the preliminary objections to Susan's claim for loss of consortium.

In summary we conclude that the trial court properly sustained Branding's preliminary objections to the Sants' claim based upon additional consideration, promissory estoppel, and Susan's claim for loss consortium. However, we conclude that the trial court erred in dismissing the Sants' claim for wrongful discharge, as the facts pled by the Sants, if true, would

entitle them to relief. We therefore affirm the order in part, reverse in part, and remand for further proceedings consistent with this memorandum.

Order affirmed in part and reversed in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/16/2016