J-A28013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MARK HANKIN AND INDUSTRIAL REAL ESTATE MANAGEMENT, INC., D/B/A HANMAR ASSOCIATES, MLP | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| CLARIANT CORPORATION AND KION DEFENSE TECHNOLOGIES, INC. | |
| APPEAL OF: CLARIANT CORPORATION | No. 359 EDA 2016 |

Appeal from the Order December 28, 2015
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): No. 2015-16284

BEFORE:  PANELLA, J., SHOGAN, J., and PLATT, J.[*]

MEMORANDUM BY PANELLA, J.                **FILED MARCH 07, 2017**

Appellant, Clariant Corporation, appeals from the order granting a preliminary injunction to Appellees, Mark Hankin and Industrial Real Estate Management, Inc. In granting the injunction, the trial court required Clariant to actively maintain a commercial property that Appellees had leased to Kion Defense Technologies, Inc., who is not a party to this appeal. Clariant had agreed to be a guarantor for Kion's performance under the lease. On appeal, Clariant argues that the trial court applied the incorrect standards in granting the preliminary injunction. After careful review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The essential facts of this case are undisputed, as the central argument involves the interpretation of a commercial lease and a subsequent assignment of the lease. Kion's corporate predecessor leased the relevant property ("the Property") from Appellees in 2002. The lease had a ten year term, which expired on July 31, 2012.

It provided for two mechanisms to extend the term. First, the lease would extend for one year automatically if neither party timely notified the other of its intent to terminate the lease. This one-year term was classified as an "Extension Term," and continued with the terms and conditions currently applicable under the lease.

The second option was classified as a "Renewal Term." Under this option, the lessee could elect to renew the lease for five years pursuant to a timely notice. In order to exercise this option, the lessee could not have previously defaulted under the lease.

Clariant purchased and merged with Kion's predecessor in 2006. Clariant therefore assumed Kion's predecessor's obligations under the lease. In 2008, in a tripartite agreement, Clariant assigned the lease to Kion with Appellees' approval. Under the assignment, Clariant agreed to act as a surety for Kion under the lease, guaranteeing not only rent payments, but also "performance … of all other terms and conditions and covenants of the Lease and all amendments or renewals thereof …"

In February 2011, Kion defaulted on the lease, allegedly by failing to make timely rent payments. Kion apparently never provided notice of its intent to terminate the lease, as four separate Extension Terms followed the end of the initial term in July 2012.

In January 2015, Appellees notified Clariant that Kion's arrears totaled approximately $1,500,000. Appellees requested that Clariant honor its obligations under the assignment by paying off the arrears. Clariant objected, arguing that it was not liable under the assignment for any Extension Terms, only the initial term and any Renewal Terms.

It is apparent that, at some point, Kion abandoned the Property, as in October 2015, Appellees reminded Kion of its obligation to maintain the Property during the coming winter months. Specifically, Appellees called on Kion to heat the Property. It is also apparent that Appellees were not pleased with Kion's response, if there was any.

On December 22, 2015, appellees filed the instant petition for emergency injunction. Appellees asserted that Clariant, as guarantor of Kion's performance under the lease, was required to maintain and heat the Property throughout the winter. After hearing oral argument from the parties, the trial court, without a hearing, signed Appellees' proposed order and granted the preliminary injunction. This timely appeal followed.

Our scope of review of preliminary injunction matters is plenary. *See Warehime v. Warehime*, 860 A.2d 41, 46, n. 7 (Pa. 2004). Our standard

of review of a trial court's order granting or denying a preliminary injunction is "highly deferential". *Id*. (citation omitted). This "highly deferential" standard of review states that in reviewing the grant or denial of a preliminary injunction, an appellate court is directed to "examine the record to determine if there were any apparently reasonable grounds for the action of the court below." *Id*. (citation omitted).

A petitioner seeking a preliminary injunction must establish every one of the following prerequisites:

> First, a party seeking a preliminary injunction must show that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages. Second, the party must show that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings. Third, the party must show that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct. Fourth, the party seeking an injunction must show that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits. Fifth, the party must show that the injunction it seeks is reasonably suited to abate the offending activity. Sixth, and finally, the party seeking an injunction must show that a preliminary injunction will not adversely affect the public interest.

*Summit Towne Centre, Inc. v. Shoe Show of Rocky Mt., Inc.*, 828 A.2d 995, 1001 (Pa. 2003) (citations omitted).

Clariant's first argument on appeal is that the trial court applied the incorrect standard in evaluating the petition for preliminary injunction. Clariant does not challenge the above stated *Summit Towne* standards.

Rather, it asserts that the preliminary injunction in this case is mandatory, as it requires the opposing party to take affirmative action. Clariant distinguishes mandatory injunctions from prohibitory injunctions, which prohibit the other party from acting. Clariant contends that a more stringent standard is applied to mandatory injunctions.

Appellees, while arguing that the instant injunction was prohibitory in nature, concede that a higher burden is placed on petitioners seeking a mandatory injunction. *See* Appellees' Brief, at 12. However, they contend that the higher burden only applies to the fourth *Summit Towne* factor, a showing of a clear right to relief.

We agree with Clariant that the injunction sought in this case was mandatory in nature. However, we agree with appellees that the heightened standard applicable to mandatory injunctions applies only to the fourth *Summit Towne* factor. *See*, *e.g.*, *Greenmoor, Inc. v. Burchick Const. Co., Inc.*, 908 A.2d 310, 313 (Pa. Super. 2006). We therefore proceed to review the trial court's order under the heightened standard applicable to mandatory injunctions.

Clariant contends that the trial court failed to apply the "enhanced evidentiary standard applicable to mandatory injunctions." However, as noted above, there was no hearing. Thus, there was no evidence to which to apply the enhanced standard.

A thorough review of the briefs of the parties and the record reveals that there are no material factual disputes between the parties. The only issue involved is the interpretation and construction of the two relevant agreements. Thus, the only issue before the trial court was a pure issue of law. *See Humberston v. Chevron, U.S.A., Inc.*, 75 A.3d 504, 509 (Pa. Super. 2013). The trial court's decision to rule on the petition without a hearing was reasonable - evidentiary burdens were not at issue.

Next, Clariant argues that the trial court erred in concluding that Appellees had established a clear right to relief under the relevant agreements. Clariant contends that under Paragraph 10 of the assignment agreement, its obligations as surety only extended to obligations of "the Lease and all amendments or renewals thereof …". Clariant asserts that the term "renewal" used in Paragraph 10 is to be given the particular meaning that the original lease gave to the term "Renewal Term."

We, much like the trial court before us, are therefore tasked with interpreting the assignment agreement. Interpretation of a contract poses a question of law and our review is plenary. *See Charles D. Stein Revocable Trust v. General Felt Industries, Inc.*, 749 A.2d 978, 980 (Pa. Super. 2000). "In construing a contract, the intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties,

bearing in mind the objects manifestly to be accomplished." *Id*. (citation omitted).

To give effect to the intent of the parties, we must start with the language used by the parties in the written contract. *See Szymanski v. Brace*, 987 A.2d 717, 722 (Pa. Super. 2009). Generally, courts will not imply a contract that differs from the one to which the parties explicitly consented. *See Kmart of Pennsylvania, L.P. v. M.D. Mall Associates, LLC*, 959 A.2d 939, 944 (Pa. Super. 2008). We are not to assume that the language of the contract was chosen carelessly or in ignorance of its meaning. *See id*.

Where the language of the contract is clear and unambiguous, a court is required to give effect to that language. *See Prudential Property and Casualty Ins. Co. v. Sartno*, 903 A.2d 1170, 1174 (2006). Contractual language is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Hutchison v. Sunbeam Coal Co.*, 519 A.2d 385, 390 (Pa. 1986) (citation omitted). "This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Madison Constr. Co. v. Harleysville Mut. Ins. Co*., 735 A.2d 100, 106 (Pa. 1999) (citations omitted).

We conclude that Clariant's attempt to conflate the term "renewal" in the assignment agreement with the term "Renewal Term" in the original lease is unavailing. While we endeavor to construe the two contracts in a manner that recognizes that they are part of the course of dealing between the two parties, we recognize that they are two separate agreements, executed approximately five years apart in time. We therefore do not assume that terms used in one must necessarily be given the same construction in the other.

Furthermore, the term "renewal" in Paragraph 10 of the assignment agreement is not capitalized in the manner that "Renewal Term" is capitalized in the original lease. Just as importantly, "renewal" in the assignment agreement does not include the word "term." We therefore see no reason that they must be construed identically. Rather, the natural and reasonable construction of the term "renewal" in the assignment includes both forms of extensions set forth in the original lease.

This conclusion is bolstered by the nature of Clariant's suretyship in the assignment agreement. It is "absolute[] and unconditional[]." Assignment Agreement, at ¶ 10. Clariant waived any right to the benefit of any law that required prior or timely enforcement of the terms of the lease. *See id*. Clariant also waived "all notices whatsoever with respect to this guaranty and with respect to the liabilities of [Kion] to Lessor under the

Lease, including but not being limited to, notice of any default by [Kion] under the Lease." *Id*.

We therefore conclude that the trial court did not err in determining that Appellees had established a clear right to mandatory injunctive relief. The assignment agreement provides that Clariant is Kion's guarantor for all covenants under the lease, including the obligation to maintain the premises properly pursuant to any extension of the lease.

Next, Clariant argues that the trial court erred in finding that the injunction was necessary to prevent immediate and irreparable harm. Clariant argues that Appellees had the right, under the lease, to enter the Property to ensure it was properly maintained and heated through the winter. Clariant thus argues that an injunction was unnecessary.

However, Clariant's argument ignores the distinction between Appellees undertaking this responsibility and Clariant undertaking this responsibility. Certainly, Appellees had this right. But clearly they preferred that Clariant honor *its* obligation to perform these acts under the assignment agreement. While there is arguable merit to the contention that had they exercised their right to enter the Property to ensure proper maintenance, the only damages that Appellees would have suffered would have been monetary damages, we refuse to conclude that the trial court erred in determining that the primary responsibility for maintenance of the Property rested squarely with Clariant.

Similarly, Clariant contends that the injunction did not preserve the status quo, but rather altered it. We disagree. As noted above, the assignment agreement establishes that the primary responsibility for maintaining the Property rests with Clariant. If the trial court had concluded that Appellees were required to exercise their right to enter the Property to maintain it despite Clariant's primary responsibility, that would have altered the status quo. However, the trial court enforced Clariant's primary responsibility to maintain the Property. It did not alter the status quo and therefore did not err.

Clariant also argues that the injunction imposes a greater harm than would have occurred in its absence. Once again, we conclude that Clariant's argument falls away given the most appropriate construction of the assignment agreement. Under the agreement, Clariant was responsible for maintaining the Property. Thus, the injunction, which requires Clariant to maintain the Property, does not impose any harm. In contrast, failing to issue the injunction would have subjected Appellees to the possible risk that Clariant would later be found to be insolvent and thus unable to reimburse them for the expense of maintaining the Property. This reasoning also disposes of Clariant's arguments that the injunction was not narrowly tailored or in the public interest.

As we conclude that the trial court did not err in construing the assignment agreement, we affirm the order granting the preliminary injunction.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/7/2017