J-A23008-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| AMERICAN WINTER SERVICES, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LIMERICK VILLAGE, LP, LONGVIEW | : | No. 947 EDA 2017 |
| MANAGEMENT, LP, ROYERSFORD | : | |
| CENTER, LP, TARRYTOWN PLAZA, LP, | : | |
| THORNDALE WEST, LP, LONGVIEW | : | |
| FIELDSTONE, LP, TRAPPE CENTER, | : | |
| LP, PHOENIXVILLE TOWN CENTER, | : | |
| LP, QUEEN ANNE PLAZA, LP, | : | |
| WESTGATE PLAZA, LP, THORNDALE | : | |
| CENTER, LP, POTTSTOWN CENTER, | : | |
| LP | : | |

Appeal from the Order January 31, 2017
In the Court of Common Pleas of Chester County
Civil Division at No(s):  No. 2014-12100-CT

BEFORE:   PANELLA, J., DUBOW, J., and FITZGERALD*, J.

MEMORANDUM BY PANELLA, J.                    **FILED DECEMBER 13, 2017**

Appellant, American Winter Services, LLC ("AWS"), contracted with

Appellee, Longview Management, LP ("Longview"),[1] to remove snow and ice

at twelve different properties during the 2013-2014 winter season. At some

_____

*   Former Justice specially assigned to the Superior Court.

[1] The other parties in the caption are the property owners. While the
contract for each property differs in certain respects, these differences are
not relevant to this appeal. We therefore will refer to all Appellees as
Longview, and refer to the separate agreements as a single agreement.

point during the contract, Longview began refusing to pay invoices submitted by AWS, claiming they had reached the contractual cap for charges during the season. AWS disagreed that the contracts contained a seasonal cap on charges, and therefore instituted the instant suit.

The trial court dismissed Longview's preliminary objections, concluding the cap language relied upon by Longview was ambiguous. ***See*** Trial Court Order, 6/30/15, at 3 n.5. Discovery ensued, and Longview subsequently filed a motion for summary judgment. The trial court granted the motion for summary judgment, finding "[t]he parties agree that the terms" relevant to this appeal "are unambiguous."[2] In the alternative, the trial court reasoned the parol evidence submitted by Longview was sufficient to establish Longview's preferred interpretation.

AWS disagreed with these conclusions, and filed this timely appeal. AWS argues the court erred in concluding that the contracts were unambiguous, particularly after it had found them ambiguous after preliminary objections. Furthermore, AWS contends the court improperly made credibility determinations when concluding the parole evidence favored Longview's interpretation of the contracts.

---

[2] The court also partially denied Longview's motion for summary judgment leaving several of AWS's claims intact. The parties settled these claims by way of a stipulated payment to AWS of $2,890.79.

After careful review, we agree with AWS. The relevant terms of the contracts are ambiguous, and the trial court explicitly engaged in weighing the evidence of record when it concluded summary judgment was appropriate. We therefore vacate and remand for further proceedings.

The relevant contracts are entitled "Snow Removal Agreement." They provide for AWS to remove snow and ice in a timely manner from the subject property starting, subject to weather conditions, on November 1, 2013, and ending on April 15, 2014.

There are two relevant provisions in the contracts that form the basis of the parties' dispute. First, under paragraph 2.A.vi.F., the contract provides "AGREEMENT CAP FOR INVOICES FOR SERVICES $[X]."[3] Longview contends this provision is a hard cap on the amount it could be billed for snow removal during the season.

In contrast, AWS cites to paragraph 3.C., which provides "[i]nvoices … relating to the Services over and above [Longview's] budgeted amount, … may be paid to [AWS] in eight equal monthly installments between May 1, 2014 and December 31, 2014." AWS maintains this paragraph reveals the cap in paragraph 2.A.vi.F. is merely a cash-flow protection for Longview - in

_____

[3] As noted in n.1, each contract had different dollar amounts. This number is irrelevant to the legal analysis here, and we therefore assign the variable "X" for ease of reading.

the event that a snow season is particularly severe, Longview may arrange to pay a portion of the bills over a longer time period.

We review a challenge to the entry of summary judgment as follows:

[We] may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. *See* Pa.R.C.P., Rule 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*E.R. Linde Const. Corp. v. Goodwin*, 68 A.3d 346, 349 (Pa. Super. 2013) (citation omitted; brackets in original).

Interpretation of a contract poses a question of law and our review is plenary. *See Charles D. Stein Revocable Trust v. General Felt Industries, Inc.*, 749 A.2d 978, 980 (Pa. Super. 2000). "In construing a contract, the intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." *Id*. (citation omitted).

- 4 -

To discern the parties' intent, we must start with the language used by the parties in the written contract. ***See Szymanski v. Brace***, 987 A.2d 717, 722 (Pa. Super. 2009). Generally, courts will not imply a contract that differs from the one to which the parties explicitly consented. ***See Kmart of Pennsylvania, L.P. v. M.D. Mall Associates, LLC***, 959 A.2d 939, 944 (Pa. Super. 2008). We are not to assume that the language of the contract was chosen carelessly or in ignorance of its meaning. ***See id***.

Where the language of the contract is clear and unambiguous, a court is required to give effect to that language. ***See Prudential Prop. and Cas. Ins. Co. v. Sartno***, 903 A.2d 1170, 1174 (2006). Contractual language is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." ***Hutchison v. Sunbeam Coal Co.***, 519 A.2d 385, 390 (Pa. 1986) (citation omitted). "This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." ***Madison Constr. Co. v. Harleysville Mut. Ins. Co***., 735 A.2d 100, 106 (Pa. 1999) (citations omitted).

When a contract is found to be ambiguous, "extrinsic or parol evidence may be considered to determine the intent of the parties." ***Z & L Lumber Co. of Atlasburg v. Nordquist***, 502 A.2d 697, 700 (Pa. Super. 1985) (citations omitted). "While unambiguous contracts are interpreted by the

court as a matter of law, ambiguous writings are interpreted by the finder of fact." **Kripp v. Kripp**, 849 A.2d 1159, 1163 (Pa. 2004) (citation omitted).

We agree with the trial court's initial assessment of the relevant language in the agreement: the meaning is not clear by simply reading the contract. Neither the term "cap" nor the term "budgeted amount" are defined in the contract. While the term "cap" has an objective dollar value ascribed to it under the contract, the term "budgeted amount" does not. Also, as the trial court observes, the term "budgeted amount" is not present anywhere else in the contract. Under these circumstances, it is not possible to determine what "budgeted amount" refers to simply by referencing the written contract.

Thus, the trial court correctly allowed for discovery in this matter. Multiple witnesses were deposed, and, as the trial court notes, the overwhelming theme among the deposition testimony was that the "budgeted amount" was an internal cash flow estimate generated by Longview. **See**, **e.g.**, N.T., Deposition of Robin McGill, 1/11/16, at 45-48. This number was never shared with AWS. **See id**., at 49.

The sole exception was the deposition testimony of Charles Gaudioso, the principal of AWS.[4] He testified he understood "budgeted amount" to be a reference to the dollar value listed as "cap." N.T., Deposition of Charles

_____

[4] Gaudioso is the owner of Laurel Gardens Holdings, LLC, which is the sole member of AWS.

Gaudioso, 2/4/16, at 82-84. Thus, he believed the contracts provided for the possibility of an unusually heavy snow season by allowing Longview to pay the extra money over an additional six months. *See id*., at 82-83.

Thus, the parol evidence before the court at the summary judgment stage revealed a conflict in the interpretation of the contract. The court devalued Gaudioso's testimony in two ways. However, in both instances, the court exceeded its purview and intruded upon the province of the ultimate finder of fact.

First, the court observed that Timothy McKenna, Michael McKenna, and Laura Mohr were employees of Longview. *See* Trial Court Order, 12/28/16, at 4 n.1. Furthermore, it is also true that all three offered deposition testimony that the term "budgeted amount" was unrelated to the "cap." *See*, *e.g.*, N.T., Deposition of Timothy McKenna, 2/18/16, at 21-22. All three agreed the "budgeted amount" referred to an internal budget number kept by Longview. *Id*., at 62-63.

However, by the time of the depositions, AWS had asserted that none of the three were still employed by AWS. *See* AWS's Responses to Longview's First Set of Interrogatories, 8/11/15, at ¶ 9. Thus, they were no longer agents for AWS whose testimony could be taken as admissions that bound AWS. Furthermore, AWS presented evidence that the McKennas had a motive to testify in manner consistent with Longview's position: Longview had awarded their new company, "MAT," contracts for snow removal during

the subsequent snow season. N.T., Deposition of Timothy McKenna, 2/18/16, at 51-52; Deposition of Robin McGill, 1/11/16, at 128.

Thus, the record reveals not only a factual dispute in the parol evidence, but also evidence capable of impeaching the testimony of the witnesses that were not agents of Longview. We conclude that, drawing all inferences in favor of AWS, as the non-moving party, the trial court erred in concluding the testimony of the McKennas and McGill was sufficient to establish the absence of any dispute of material fact.

Next, the trial court found Gaudioso's testimony incredible due to alleged inconsistencies. The trial court notes Gaudioso "concluded that the figures in the contracts for seasonal caps are the budgeted figures despite the fact that he was adamant that Longview never told him the internal budget figures." Trial Court Order, 12/28/16, at 4 n.1. However, Gaudioso consistently testified he understood Longview had an internal budget value that was never shared with him. *See* N.T., Deposition of Charles Gaudioso, 2/4/16, at 206-207. He contrasted the internal budget number with the contractual budget number contained in the contract. *See id*. ("There's her internal budget for her planning process and there's a budget figure in the contract.")

We cannot conclude Gaudioso's testimony is so internally inconsistent as to remove it fully from evaluation by a finder of fact. Drawing all inferences in favor of AWS, a reasonable fact-finder could conclude Gaudioso

is correct in his assertion that Longview had an internal budget for planning purposes, and an external budget number contained in the contracts. Under these circumstances, it was not proper for the trial court to decide these issues of credibility pursuant to a motion for summary judgment.

AWS has presented sufficient evidence to allow presentation of its claims to a fact-finder. We therefore reverse the order granting partial summary judgment and remand for further proceedings.

Order reversed. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Justice Fitzgerald joins the memorandum.

Judge Dubow files a dissenting statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/13/2017