J-A02010-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SUNBELT RENTALS, INC., A NORTH CAROLINA CORPORATION | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 662 WDA 2019 |
| I&M LAND COMPANY, A PENNSYLVANIA GENERAL PARTNERSHIP, DIANA W. IRWIN, AN INDIVIDUAL, WYLIE IRWIN, AN INDIVIDUAL AND BONITA J. MOORE | : | |
| v. | : | |
| | : | |
| MB REALTY GROUP, INC., A NORTH CAROLINA CORPORATION | : | |

Appeal from the Order Entered April 15, 2019
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s):  No 684 of 2017

BEFORE:  SHOGAN, J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY SHOGAN, J.:                    **FILED JULY 21, 2020**

Appellant, Sunbelt Rentals, Inc., a North Carolina Corporation, appeals from the order that denied its motion for partial judgment on the pleadings, granted the motion for partial judgment on the pleadings filed by Appellees, I&M Land Company, a Pennsylvania general partnership, Diana W. Irwin, Wylie Irwin, and Bonita J. Moore, and granted in part and denied in part the supplemental motion for judgment on the pleadings filed by Intervenor, MB Realty Group, Inc.  We affirm.

In July of 1999, Appellant's predecessor, Nationsrent, entered into a Lease agreement ("the Lease") with Appellee I&M Land Company, in which Appellant leased a parcel of land. Appellant and Nationsrent merged in 2006, and Appellant assumed responsibilities under the Lease. Thereafter, the Lease was amended three times.[1] The relevant portions of the Lease are a "Tenant's Option to Purchase" in Section 12 and a "Right of First Refusal" in Section 13.

On August 11, 2016, Appellee and Intervenor entered into an Agreement for the sale and purchase of the property.[2] Intervenor reached out to Appellant regarding the upcoming purchase and development, and Appellant refused to cooperate with Intervenor and Cracker Barrel, insisting that Appellant had the right to purchase the property under Section 12 of the Lease.

On August 17, 2016, Appellee provided Appellant with the requisite transfer notice pursuant to the right of first refusal in Section 13 of the Lease, which Appellant received on August 22, 2016. Appellant did not file a counter notice within twenty days as required under Section 13, which would have indicated the desire to exercise the option to purchase. Appellee notified

---

[1] None of the amendments altered the two provisions of the Lease that are at issue herein. Rather, they extended the terms of the Lease.

[2] Intervenor also memorialized, in a letter of intent, a separate agreement to develop the property to be used as a Cracker Barrel restaurant.

Appellant of its failure to timely respond, which constituted a waiver of the right to first refusal.

On February 7, 2017, Appellant filed its complaint against Appellees entitled: "Action to Quiet Title, For Declaratory Judgment and Other Relief." Appellees filed an answer and a counterclaim on May 4, 2017. Appellant filed a reply and new matter on May 26, 2017. On June 28, 2017, Appellee filed a reply to Appellant's new matter.

On November 9, 2017, Intervenor filed its petition to intervene and a third-party complaint, which was granted on February 5, 2018. Appellant filed preliminary objections, and Intervenor filed an amended third-party complaint.

On May 25, 2018, Appellant filed preliminary objections to Intervenor's third-party complaint. On August 13, 2018, the trial court entered an order overruling, in substantial part, Appellant's preliminary objections. On September 6, 2018, Appellant filed an answer and new matter to the third-party complaint. On September 6, 2018, Intervenor filed its reply to the new matter.

All three parties filed various motions for partial judgment on the pleadings. On April 16, 2019, the trial court filed an order and opinion, which denied Appellant's motion for partial judgment on the pleadings and granted both Appellee's and Intervenor's motions for judgment on the pleadings as to the request for declaratory judgment. Appellant filed this timely appeal. The

trial court did not direct Appellant to file a Pa.R.A.P. 1925(b) statement, and it relied upon its prior order and opinion in satisfaction of its obligations under Pa.R.A.P. 1925(a).

Appellant presents the following issues for our review:

I. Did the Common Pleas Court commit an error of law in interpreting the Lease to include a waiver of Sunbelt's property right in its continuing Option to Purchase pursuant to Section 12 of the Lease, when Sunbelt chose not to exercise its Right of First Refusal under Section 13 of the Lease, and where the proposed sale had not resulted in a purchase of the Property?

II. Did the Common Pleas Court commit an error of law in considering matters outside the pleadings, when it granted Defendants' motion for judgment on the pleadings, and denied Sunbelt's motion for judgment on the pleadings?

III. In the alternative, if the Court did not err on issues (1) and (2) above, did the Court commit an error of law in granting judgment on the pleadings where the parties advanced more than one reasonable interpretation of the Lease, creating an ambiguity which should be resolved through extrinsic evidence which was not part of the pleadings?

Appellant's Brief at 10.

Although not raised by the parties, prior to addressing the merits of the issues set forth, we *sua sponte* address the threshold question of the appealability of the order before us because it affects the jurisdiction of this Court. ***Brickman Group, Ltd. v. CGU Ins. Co.***, 829 A.2d 1160, 1163 (Pa. Super. 2003). As a general rule, an appeal can be taken only from a final order. ***In re Estate of Borkowski***, 794 A.2d 388, 389 (Pa. Super. 2002). Final orders are defined as orders that dispose of all claims and all parties. Pa.R.A.P. 341.

However, Pa.R.A.P. 311 provides that an appeal may be taken as of right from "[a]n order that is made final or appealable by statute or general rule, even though the order does not dispose of all claims and of all parties." Pa.R.A.P. 311(a)(8). The Declaratory Judgments Act includes the following provision:

> Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and **such declarations shall have the force and effect of a final judgment or decree**.

42 Pa.C.S. § 7532 (emphasis added).

In ***Pa. Bankers Ass'n v. Pa. Dep't of Banking***, 948 A.2d 790, 798 (Pa. 2008), our Supreme Court addressed the finality of a declaratory judgment order. The Court held that the declaratory judgment determination was interlocutory and not an appealable final order "because [the appellants] might still be able to obtain the relief they are seeking . . . based on one of their alternative theories pending before the Commonwealth Court, the order dismissing their challenge . . . had no practical effect upon the ultimate decision in this case." ***Id***. at 798.

Here, the order on appeal resolved the ultimate issue of the parties' rights under the Lease. Accordingly, Appellant lacks any other viable theory of recovery. Hence, the declaratory judgment at issue constitutes a final,

appealable order pursuant to Pa.R.A.P. 311(a)(8). Therefore, we will proceed with our review of the issues presented by Appellant.

Appellant first argues that the trial court erred in concluding that Appellant waived its right to exercise the option to purchase under Section 12 when it elected not to exercise its right of first refusal under Section 13. Appellant's Brief at 22-35. Essentially, Appellant claims that the Section 12 option to purchase is not limited or modified by the Section 13 right of first refusal. Appellant contends that "[t]he parties intended for [Appellant] to have a continuing property right in [the Section 12] Option to Purchase unaffected by a proposed sale[, which triggered the Section 13 right of first refusal,] unless that proposed sale actually came to fruition and resulted in a purchase." *Id*. at 28-29. Appellant concludes that the trial court erred in determining that Appellant's option to purchase under Section 12 is suspended during a pending offer "regardless of whether the offer has expired, and/or resulted in a purchase." *Id*. at 34 (footnote omitted).

In reviewing the trial court's grant of the motion for judgment on the pleadings, our scope of review is plenary. ***Vetter v. Fun Footwear Co.***, 668 A.2d 529, 531 (Pa. Super. 1995) (*en banc*). Our standard of review for the grant or denial of a motion for judgment on the pleadings is as follows:

> [A]ppellate review of a trial court's decision to grant or deny judgment on the pleadings is limited to determining whether the trial court committed an error of law or whether there were facts presented which warrant a jury trial. In conducting this review, we look only to the pleadings and any documents properly attached thereto. Judgment on the pleadings is proper only where

the pleadings evidence that there are no material facts in dispute such that a trial by jury would be unnecessary.

In passing on a challenge to the sustaining of a motion for judgment on the pleadings, our standard of review is limited. We must accept as true all well pleaded statements of fact of the party against whom the motion is granted and consider against him only those facts that he specifically admits. We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

*John T. Gallaher Timber Transfer v. Hamilton*, 932 A.2d 963, 967 (Pa. Super. 2007).

Our standard of review in a declaratory judgment action is narrow. We review the decision of the trial court as we would a decree in equity and set aside factual conclusions only where they are not supported by adequate evidence. We give plenary review, however, to the trial court's legal conclusions. In reviewing a declaratory judgment action, we are limited to determining whether the trial court clearly abused its discretion or committed an error of law. Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

*Jarl Inv., L.P. v. Fleck*, 937 A.2d 1113, 1121 (Pa. Super. 2007) (internal quotations and citations omitted).

In addition, we are mindful that a lease is a contract interpreted according to contract principles. *Kmart of Pennsylvania, L.P. v. MD Mall Associates, LLC*, 959 A.2d 939, 943 (Pa. Super. 2008). A fundamental rule in construing a contract is to ascertain and give effect to the intent of the contracting parties. *Id*. The intent of the parties in a written contract is contained within the writing itself. *Id.* at 944. When the contract is clear and

unambiguous, the meaning of the contract is ascertained from the writing alone. *Id*. Moreover,

> [i]t is well-settled that clauses in a contract should not be read as independent agreements thrown together without consideration of their combined effects. Terms in one section of the contract, therefore, should never be interpreted in a manner which nullifies other terms in the same agreement. Furthermore, the specific controls the general when interpreting a contract.

*Southwestern Energy Production Co. v. Forest Resources, LLC*, 83 A.3d 177, 187 (Pa. Super. 2013) (quoting *Trombetta v. Raymond James Financial Services, Inc.*, 907 A.2d 550, 560 (Pa. Super. 2006)).

Appellees and Appellant's predecessor entered into the Lease on July 29, 1999, which governs this matter. Section 12 of the Lease set forth Appellant's option to purchase the premises, in relevant part, as follows:

**SECTION 12**
**TENANT'S OPTION TO PURCHASE**

Tenant shall have the right to purchase the Premises at any time during the Term of this Lease upon giving notice in writing to Landlord (the "Purchase Notice") prior to the expiration of the original Term or any Extension Term hereof of Tenant's intention to purchase the Premises. ... If Tenant exercises this Option to Purchase, then Tenant shall purchase and Landlord shall sell the Premises upon the terms and conditions set forth on the Terms for sale and Purchase attached hereto as Exhibit "E" (the "Purchase Terms"). ...

Lease, 7/29/99, at 16, Section 12.

In addition, Section 13 of the Lease presents the following specific conditions relevant to Appellant being presented with an offer to purchase from a third party buyer:

## SECTION 13
## RIGHT OF FIRST REFUSAL

If during the Term of any Extension Term of this Lease, Landlord shall have received a bona fide arm's length offer to purchase the Premises which is acceptable to Landlord (the "Offer") from any third party (the "Transferee"), Landlord shall send a notice (herein referred to as the "Transfer Notice") to Tenant. The Transfer Notice shall set forth the exact terms of the Offer so received, together with a copy of the Offer, and shall state the desire of Landlord to sell the Premises on such terms and conditions. Thereafter, Tenant shall have the right and option to purchase the Premises at the price and upon the terms and conditions specified in the Offer. If Tenant desires to exercise its option, it shall give notice (the "Counter Notice") to that effect to Landlord within twenty (20) days after receipt of the Transfer Notice. Such Counter Notice shall be accompanied by a letter acknowledging Tenant's agreement to be bound by the terms and conditions of the Offer. Such Counter Notice shall set forth a date not later than sixty (60) days from the service of the Counter Notice on which the closing shall be held. The Tenant's failure to give a timely Counter Notice (or notice of its refusal to purchase) shall be deemed a waiver of its option to purchase the Premises pursuant to the Offer, but shall not be deemed a waiver of its option to purchase the Premises pursuant to any modification of the Offer or any future offers. Tenant's rights under this Section 13 are assignable to any person or entity which is or would be a permitted assignee pursuant to Section 9 hereof. Tenant's failure to, or its election not to, exercise its right of first refusal hereunder shall not affect the continued enforceability of the option to purchase provided in Section 12 hereof (provided only that the third party making the bona fide arm's length offer to purchase the Premises does not purchase the Premises).

Lease, 7/29/99, at 16-17, Section 13.

In addressing the parties' petitions for judgment on the pleadings, the trial court offered the following analysis:

Looking to the [L]ease, the terms appear plain and unambiguous. Section 12 provides a detailed process outlining [Appellant's] option to purchase the property during the pendency of the Lease. Section 13 details the process required should

[Appellee] desire to sell the property to a third party. It provides for the acceptance or waiver of a right of first refusal option for [Appellant]. The key phrase of Section 13 reads as follows: "Tenant's failure to, or its election not to, exercise the right of first refusal hereunder shall not affect the continued enforceability of the option to purchase provided in Section 12 hereof (provided only that the third party making the bona fide arm's length offer to purchase the Premises does not purchase the Premises.)"

[Appellant] argues that since the contract provides for the continued enforceability of its Section 12 purchase option, even after the time has passed for exercising its right of first refusal, that it has the right to purchase the property pursuant to Section 12 while [Appellees'] sale to Intervenor is still pending, but not yet consummated. This reading however, entirely ignores the parenthetical clarification that this sentence only has effect if the third party "does not purchase" the property. It is undisputed that [Intervenor] and [Appellees] entered into a Purchase Agreement on August 11, 2016, which [Appellant] was aware of when it received the Transfer Notice, and subsequently failed to exercise its right of first refusal under Section 13.

[Appellant] points to the case of *Amoco Oil Co. v. Snyder*, which contains a similar but distinct factual pattern. 478 A.2d 795 (Pa. 1984). In *Amoco*, the Pennsylvania Supreme Court interpreted a similar lease contract, which contained a purchase option for the tenant along with a third-party purchase clause which contained a right of first refusal. *Id*. at 796. The Court found that the tenant had the right to exercise the purchase option even after it had waived its right of first refusal, while a third party sale offer was still pending. *Id*. at 78. The crucial distinction here is that the Amoco lease contained no terms limiting the purchase option during the pendency of the third party sale. *Id*. The present Lease does contain a restriction on the Section 12 option, which goes back into effect after waiver of the right of first refusal "provided only that the third party making the bona fide arm's length offer to purchase the Premises does not purchase the Premises."

Failure of the [c]ourt to give effect to the parenthetical language would entirely nullify its clear purpose in barring the Section 12 option if a third party is in the process of purchasing the property. Allowing [Appellant] to exercise the Section 12 option at any point up until the actual consummation of the sale

would invalidate the parenthetical [language] for all practical intents and purposes, and it would thus be an inappropriate reading of the Lease. When read together, Sections 12 and 13 clearly read that the Section 12 option will only reactivate upon the third party's failure to purchase the property. As such, it is clear under the Lease that [Appellant] cannot exercise its Section 12 option while a sale is pending with a third party, as is the case based upon the Agreement of Sale between [Appellee] and [Intervenor] which is still in effect, and so [Appellant] has no right to purchase the property at this time.

Trial Court Opinion, 4/15/19, at 4-5. We are constrained to agree.

Our review of the certified record reflects that on August 17, 2016, Appellee sent Appellant notice that it intended to sell the Premises to Intervenor for the sum of $3,000,000. Complaint, 2/2/17, at Exhibit 12. On September 6, 2016, Appellant sent correspondence to Appellee indicating it was undecided regarding whether it would deliver a counter notice pursuant to Section 13 of the Lease. *Id*. at Exhibit 13. On September 13, 2016, Appellee sent Appellant a letter indicating that, due to the fact that twenty days had elapsed from the date of the transfer notice, Appellant had waived its right of first refusal pursuant to Section 13. *Id*. at Exhibit 14. Thus, Appellant failed to timely exercise its right of first refusal. However, Appellant asserts its failure to act under Section 13 did not extinguish its right to purchase under Section 12.

Upon review of the portions of the Lease set forth above, and taking into account all of the pertinent language and accompanying restrictions, we conclude that Section 13 contains language that precludes Appellant from

exercising the Section 12 option to purchase under particular circumstances. The following portion of Section 13 is controlling:

> [Appellant's] failure to, or its election not to, exercise its right of first refusal [under Section 13] shall not affect the continued enforceability of the option to purchase provided in Section 12 hereof **(provided only that the third party making the bona fide arm's length offer to purchase the premises does not purchase the Premises)**.

Lease, 7/29/99, at 17, Section 13 (emphasis added). This language in Section 13 specifically restricts the general language in the Section 12 option to purchase. To ignore this restrictive portion of Section 13 would nullify its provision.

We find support for this conclusion in our decision in **Bobali Corporation v. Tamapa Company**, 340 A.2d 485 (Pa. Super. 1975). Therein, the parties entered into an agreement of sale in which Tamapa purchased property from Bobali, and the parties entered into an additional option agreement allowing Tamapa to purchase a contiguous tract of land for a fixed price. **Id**. at 487. The agreement contained an option of first refusal in the event that a third party purchaser made an offer on the contiguous tract of land. **Id**. at n.1. Subsequently, Bobali received a third party offer, and Tamapa then attempted to purchase the tract of land pursuant to the fixed-price option and not the right-of-first-refusal option. **Id**. at 487. As does Appellant in this matter, Tamapa argued "that the fixed price option could only be terminated upon the bona fide sale of the premises to a third party, as opposed to the mere offer of the third party." **Id**. at 489. We opined "that

the right of first refusal provision … would be of no purpose or value unless it was the intent of the parties that the right of first refusal would supersede and terminate the fixed price option." *Id*.

To the extent Appellant relies upon our Supreme Court's decision in *Amoco Oil Company v. Snyder*, 478 A.2d 795 (Pa. 1984), we conclude that the case is readily distinguishable. In *Amoco*, Snyder leased property to Amoco, and the lease contained an option to purchase and a right of first refusal. Snyder subsequently obtained a bona fide third party offer to purchase the property, and Amoco did not exercise its right of first refusal. *Id*. at 796-797. Rather, Amoco attempted to exercise its option to purchase, and Snyder refused to convey the property. *Id*. at 797. The trial court granted Amoco's request for specific performance and the Superior Court affirmed, as did the Supreme Court. *Id*. at 797, 799. In reaching its conclusion, our Supreme Court determined that the lease in question contained no language that restricted the applicability of the option to purchase. *Id*. at 798-799. In concluding that the fixed-price option was not restricted, the Court noted that "nowhere is there a provision in the lease that expressly terminates the fixed price option upon the occurrence of an event or a lapse of time…. Nowhere is there additional language which restricts the applicability of the fixed price option." *Id*. at 798.

Hence, upon review of the parties' arguments, the relevant legal authority, the applicable provisions of the Lease, and the remainder of the

certified record, we conclude that Appellant waived its option to purchase under Section 13 by failing to file a timely counter notice as required. Because Appellee and Intervenor entered into a sales agreement, and Appellant waived its Section 13 right of first refusal, the specific language of Section 13 controls, and Section 12 no longer applies unless Intervenor "does not purchase the Premises." Lease, 7/29/99, at 17, Section 13. Therefore, the trial court did not err in reaching its conclusion. *See Southwestern Energy*, 83 A.3d at 187 ("the specific controls the general when interpreting a contract"). Accordingly, Appellant's contrary claim fails.

Appellant next argues that in making its decision, the trial court erred in considering matters outside of the pleadings. Appellant's Brief at 35-38. Appellant asserts that the trial court erred in concluding that the agreement of sale between Appellee and Intervenor was "still in effect." *Id*. at 36.

Appellant explains its argument as follows:

The proposed Agreement between [Appellees] and [Intervenor] was signed by the parties on August 5, 2016, August 7, 2016, and August 11, 2016. The proposed Agreement had a "due diligence period" of 270 days. Therefore, [Intervenor] had until May 11, 2017 to complete its due diligence in order to move forward with the purchase. The proposed Agreement had a closing date 30 days after the expiration of the due diligence period. Therefore, [Intervenor] had until June 10, 2017 to close on the Property in order to meet the conditions precedent to the proposed Agreement and complete the purchase.

* * *

[Intervenor] admitted in its complaint that [Appellee] and [Intervenor] never consummated the proposed Agreement, never completed due diligence, and did not close on the proposed

purchase on June 10, 2017. (See Intervenor's complaint ¶¶ 41, 55c, 64c; R.242a-R.247a.)

*Id*. at 37. Appellant concludes that "[i]n making its decision on judgment on the pleadings, the [c]ourt below inappropriately considered alleged evidence that was not in the pleadings and in fact, was inconsistent with the pleadings i.e. that the proposed Agreement of Sale was 'still in effect.'" *Id*. at 38. However, Appellant fails to prove that because Appellee and Intervenor did not close on the property on June 10, 2017, the sales agreement was not still in effect as the trial court concluded.

We observe that the Superior Court applies the same standard as the trial court and confines its considerations to the pleadings and documents properly attached thereto. *Donaldson v. Davidson Bros., Inc.*, 144 A.3d 93, 101 (Pa. Super. 2016). The court must accept as true all well-pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts that were specifically admitted. *Kote v. Bank of N.Y. Mellon*, 169 A.3d 1103, 1107 (Pa. Super. 2017).

Moreover, our Supreme Court has long stated that:

even though the time fixed in an agreement for settlement is stated to be of the essence of the agreement, it may be extended by oral agreement or be waived by the conduct of the parties, and where the parties treat the agreement as in force after the expiration of the time specified for settlement it becomes indefinite as to time and neither can terminate it without reasonable notice to the other.

*Warner Company v. MacMullen*, 112 A.2d 74, 78 (Pa. 1955).

Our review of the certified record reflects that the sales agreement does not contain a "time is of the essence" provision. Intervenor's First Amended Third-Party Complaint, 5/8/18, Exhibit A. Thus, there was no requirement in the sales agreement for strict compliance with the deadlines for due diligence and closing. Accordingly, we discern no merit to Appellant's claim that the trial court relied upon matters outside of the pleadings in stating that the sales agreement was still in effect. Thus, this claim fails.

Appellant last argues that, in the alternative, there can be more than one reasonable interpretation of the parenthetical language in Section 13. Appellant's Brief at 38-43. Appellant asserts that there is an ambiguity that should be resolved through extrinsic evidence, which is not part of the pleadings.

Pursuant to Pa.R.A.P. 302, issues that are not raised in the lower court are waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302(a). Likewise, we have held that "[a] claim which has not been raised before the trial court cannot be raised for the first time on appeal." *Commonwealth v. Lopata*, 754 A.2d 685, 689 (Pa. Super. 2000). In addition, we have long stated that "[a] theory of error different from that presented to the trial jurist is waived on appeal, even if both theories support the same basic allegation of error which gives rise to the claim for relief." *Commonwealth v. Gordon*, 528 A.2d 631, 638 (Pa. Super. 1987). Thus, only claims properly presented in the trial court are preserved for appeal.

Our review of the certified record reflects that Appellant never argued or pled before the trial court that there is any ambiguity in the Lease.  In fact, in its motion for partial judgment on the pleadings, Appellant specifically stated, "Furthermore, no party has pled that there is any ambiguity in the Lease."  Motion for partial judgment on the pleadings, 2/15/19, at 10, ¶ 45. Accordingly, Appellant's failure to argue before the trial court a claim that the Lease is ambiguous results in failure to preserve the issue for appellate review. Pa.R.A.P. 302(a); *Lopata*, 754 A.2d at 689.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  7/21/2020